1 | Brittany A. Stillwell
2 | info@brittstillwell.com
3 | 8 Century Avenue, IFC Tower 2, Floor 8
4 | Pudong District, Shanghai, China 200120
  | Tel: 702-907-1908
  | PLAINTIFF APPEARING IN PRO PER

# U.S. DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**BRITTANY A. STILLWELL**, *an individua*l

        Plaintiff,
  v.

**CITY OF LOS ANGELES** et al.

        Defendants.

Case No. 2:22-cv-09426-JWH-(JCx)
*Hon. John W. Holcomb*
*Discovery Motions Assigned to Hon. Jacqueline Chooljian*

**PLAINTIFF'S INITIAL DISCLOSURES**

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, plaintiff Brittany A. Stillwell ("Plaintiff") makes the following initial disclosures (the "Disclosures") related to this action.[1]

---

[1] Per this Court's Order (ECF No. 57) and Fed. R. Civ. P., Rule 26(f), Plaintiff and Defendants' attorneys held a Rule 26(f) conference on October 30, 2023. Per Fed. R. Civ. P., Rule 26(C), Initial Disclosures are due within 14 days after the Rule 26(f) conference.

**INTRODUCTION**

These Disclosures are made without the waiver, intentional or otherwise, of all privileges provided by law, and local rules. Plaintiff expressly reserves the further right not to disclose information subject to privilege, work-product, or privacy, and expressly reserve all objections as to the discoverability, admissibility and/or relevance of all information disclosed herein.

The Disclosures herein are based upon information reasonably available to Plaintiff at this time. Furthermore, the Disclosures are limited to the status of the case to-date. Plaintiff has not completed the investigation of this matter, and Plaintiff's discovery has only recently commenced.[2] Additional investigation and discovery regarding Plaintiff's claims and Defendant's defenses[3] may reveal other information that may be applicable. Plaintiff reserves the right to revise, withdraw and/or supplement the Disclosures made herein, pursuant to law, local rules, and as future events warrant.

**STATUTORY AUTHORITY**

Federal Rules of Civil Procedure, Rule 26(a) provides:

---

[2] During the Rule 26(f) conference, attorneys for the Onni and KTS Defendants stated they wanted discovery to commence *after* a ruling has been made on their respective pending Motions to Dismiss.

[3] The Defendants have not answered Plaintiff's First Amended Complaint. Therefore, Defendants' defenses are unknown to Plaintiff, at the time of filing her Disclosures.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(a) Required Disclosures.

(1) Initial Disclosure.

(A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

(iii) a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible

judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

### PLAINTIFFS' INITIAL DISCLOSURES (AS OF NOVEMBER 9, 2023)

### 1. WITNESSES

Pursuant to Fed. R. Civ. P., Rule 26(a)(1)(A)(i), Plaintiff is presently aware of the following individuals who may have discoverable information which Plaintiffs may use to support their claims (exclusive of witnesses to be used solely for impeachment):

a.

| Name of Individual Likely to have Discoverable Information | Contact Information | Subject Matter of Discoverable Information |
|---|---|---|
| Brittany A. Stillwell, Plaintiff | 8 Century Avenue, Shanghai, China 200120 | It's anticipated that the witness will testify as to the following: Housing discrimination and safety issues at Hope + Flower Apartment, theft of property, harassment and threats experienced after voicing safety concerns, all allegations in the First Amended Complaint ("FAC") and testimony relevant to the damages sought in Plaintiff's FAC |

| | | |
|---|---|---|
| Gregory Alvarado, LAHD Housing Investigator | Los Angeles Housing Department, 1910 Sunset Blvd., Suite 300, Los Angeles, California, 90026 | It's anticipated that the witness will testify as to the following: LAHD housing policies, TAHO enforcement, information pertaining complaints against Onni and against Hope + Flower, information regarding TAHO prosecutions in the past three years, and information pertaining to LAHD's investigation Plaintiff's complaints against her landlord |
| Terry L. Carter, Commanding Officer of LAPD Records and Identification Division | Los Angeles Police Dept 100 West 1st Street Room P1-731, Los Angeles, California 90012 | It's anticipated that the witness will testify as to the following: Records concerning crime and arrests at 1201 S. Hope Street, including number of police reports, theft, petty crime, violent crimes reported at Hope + Flower Apartments |
| LAPD Chief Michael R. Moore | Los Angeles Police Dept 100 West 1st Street Los Angeles, California 90012 | It's anticipated that the witness will testify as to the following: Policies and procedures for off duty police officers, information regarding LAPD officers' duty to disclose off-duty work, names of LAPD officers working off duty at Hope + Flower Apartments from March 2020 – April 2023 |
| Greg Stearns of LAPD's Robbery-Homicide Division | Los Angeles Police Dept 100 West 1st Street Los Angeles, California 90012 | It's anticipated that the witness will testify as to the following: Onni and Hope + Flower's lack of cooperation with the Heidi Planck's murder investigation, including testimony about security and surveillance at Hope + Flower Apartments |

| | | |
|---|---|---|
| S. P., former resident at Hope + Flower | Los Angeles, California | It's anticipated that the witness will testify as to the following: information regarding parties in Apartment 4002, dispensaries and poker parties hosted at Hope + Flower, and testimony regarding seeing Heidi Planck's body stuck in a trash chute on October 17, 2021 |
| Jane Doe (former resident at Hope + Flower) | Los Angeles, California | It's anticipated that the witness will testify as to the following: Harassment and threats after witnessing events related to Heidi Planck's death |
| Security Managers who worked at Hope + Flower from January 2020 through May 2023<br><br>(the names of these witnesses are in the possession of the Onni Defendants) | 1201 S. Hope Street, Los Angeles, California 90015 | It's anticipated that the witnesses will testify as to the following: safety and security policies and procedures at Hope + Flower, procedures for reporting theft or crimes on the property, information regarding maintenance employees' access to apartments, the record keeping procedures for monitoring who has access to the master key fobs that open all tenants' apartments, information about surveillance cameras and record retention for surveillance footage |
| Property Managers who worked at Hope + Flower from January 2020 through May 2023 | 1201 S. Hope Street, Los Angeles, California 90015 | It's anticipated that the witnesses will testify as to the following: safety and security at Hope + Flower, rental application and leasing process, process for investigation tenant complaints about discrimination and safety concerns, |

| (the names of these witnesses are in the possession of the Onni Defendants) | | information about COVID-19 rental assistance applications submitted on behalf of Hope + Flower residents, information regarding the mishandling of the Heidi Planck death investigation, information regarding the method for calculating utilities and fees, information regarding the relocation of the contents of Stillwell's storage unit, billing and book keeping practices, and policies and procedures for investigating and issuing lease violations |
|---|---|---|
| Felix Felder, Plaintiff's co-tenant on leases for Apartments #2118 and #2814 at Hope + Flower | felix.felder@fashionnova.co | It's anticipated that the witness will testify as to the following: harassment, discrimination, leasing process, and illegal activity at Hope + Flower |
| James O'Neill, Onni Regional Manager | 1201 S. Hope Street, Los Angeles, California 90015 | It's anticipated that the witness will testify as to the following: safety and security at Hope + Flower, rental application and leasing process, process for handling of complaints about discrimination and safety, information about Onni and Hope + Flower COVID-19 rental assistance applications, information regarding the unlawful detainer suits filed against Stillwell in December 2021 and June 2022, testimony regarding texts to Stillwell about removing her Yelp |

| | | |
|---|---|---|
| | | reviews in exchange for Onni dismissing the December 2021 unlawful detainer suit, and information about the number of evictions filed on behalf of Onni in Los Angeles during the dates that local, state, and national eviction moratoriums were in place |
| Hope + Flower employee whose email address is jaube@onni.com<br><br>(the name of these witness is in the possession of the Onni Defendants) | 1201 S. Hope Street, Los Angeles, California 90015 | It's anticipated that the witness will testify as to the following: applying for COVID-19 rental assistance on behalf of Plaintiff, and other Onni tenants without their consent, or knowledge. |
| Chris Evans, Defendant and Partner at KTS law firm | Kimball Tirey & St John, 915 Wilshire Boulevard, Suite 3400, Los Angeles, CA 90071 | It's anticipated that the witness will testify as to the following: Testify about number of evictions filed on behalf of Onni in Los Angeles, LA County and on behalf of Hope + Flower during the dates that local, state, and national eviction moratoriums were in place; Information regarding two unlawful detainer suits that were filed, and eventually dismissed, against Stillwell. |
| Tad Egawa, General Council for State of California Business, Consumer Services and | Tad.Egawa@bcsh.ca.gov | It's anticipated that the witness will testify as to the following: Information regarding Housing is Key COVID-19 rental assistance program applications initiated, received, and processed on behalf of Onni |

| | | |
|---|---|---|
| Housing Agency ("BCSH") / Housing is Key COVID-19 Rental Assistance Program | | and Hope +Flower; information regarding the amounts of rent and utilities allegedly owed to Onni and Hope + Flower |
| David Slayton, Executive Officer / Clerk of Court for the Superior Court of California, County of Los Angeles | Court Clerk's Office 111 North Hill Street Los Angeles, CA 90012 | It's anticipated that the witness will testify as to the following: the number of unlawful detainer summons' issued on behalf of Onni and Hope + Flower for evictions, during the dates that local, state, and national eviction moratoriums were in place; the number of Onni and Hope + Flower tenants who were evicted during the dates that local, state, and national eviction moratoriums were in place. |

b.  All tenants, including temporary and short-term tenants, who, at any time since January 1, 2020, lived at Hope + Flower Apartments. These persons presumably have knowledge about unlawful activity at H+F, security incidents, utility charges, information regarding the return of their deposits at the end of lease, and application and leasing processes. Plaintiff is informed and believes that Defendant, among others, may be in possession of the names and contact information of these persons.

e. Expert Witnesses: Plaintiff anticipates retaining expert witnesses to testify as to Plaintiff's emotional distress claims, and the computation of damages sought.

f. Plaintiff reserves the right to amend this list once other witnesses are made known to her through regular discovery procedures, or otherwise.

## 2. DOCUMENTS

Pursuant to Fed. R. Civ. P. Rule 26(a)(1)(A)(ii), Plaintiff is presently aware of the following categories of documents that are within her possession, custody, and control which Plaintiff may use to support her claims (exclusive of materials to be used solely for impeachment):

| Description by Category of Document "(D)," Electronically Stored Information "(ESI)," or Tangible Thing "(TT)" | Description by Location of Document "(D)," Electronically Stored Information "(ESI)," or Tangible Thing "(TT)" |
|---|---|
| All pleadings, declarations, exhibits, and memoranda file by Plaintiff herein (ESI) | 8 Century Avenue, IFC Tower 2, Floor 8 Pudong District, Shanghai, China 200120 (ESI) |
| All exhibits of Plaintiff's First Amended Complaint, which were incorporated by reference (D) | 8 Century Avenue, IFC Tower 2, Floor 8 Pudong District, Shanghai, China 200120 (D) |
| Multiple USB sticks containing photos and videos of guests of the 40th floor of the Hope Tower at Hope + Flower Apartments on October 16 – 17, 2023 (TT) | Av. Juan Tanca Marengo, Guayaquil, Ecuador 090513 (TT) |
| Photos and videos of guests of the 40th floor of the Hope Tower at Hope + Flower Apartments on October 16 – 17, 2023 (ESI) | Tolstoy Street, Moscow, Russia, 119021 (ESI) |

| | |
|---|---|
| Video from multiple cameras located at Hope +Flower. Recordings took place on October 16, 2021 – October 19, 2021 (ESI) | Tolstoy Street, Moscow, Russia, 119021 (ESI) |
| Every video recording that was incorporated by reference in Plaintiff's First Amended Complaint  (ESI) | 8 Century Avenue, IFC Tower 2, Floor 8 Pudong District, Shanghai, China 200120 (ESI) |
| USB stick containing every video recording that was incorporated by reference in Plaintiff's First Amended Complaint (TT) | Av. Juan Tanca Marengo, Guayaquil, Ecuador 090513 (TT) |

a. Plaintiff reserves the right to amend this list once other documents are made known to her through regular discovery procedures, or otherwise.

## 3. DAMAGES

The categories of damages Plaintiff is seeking for each cause of action are set forth in detail in Plaintiff's FAC, and incorporated herein for all purposes. The amount and type of damages Plaintiff seeks to hold Defendants jointly and severally liable for are set forth below:

| DAMAGES CLAIMED | COMPUTATION OF DAMAGES |
|---|---|
| As to the First Cause of Action – Negligence an amount to be proven at trial for economic, noneconomic, monetary, or compensatory damages.<br><br>1. Loss of Property – Storage Unit<br>2. Tinnitus from July 4th Fireworks | **an amount to be proven at trial for:**<br><br>1. Loss of Property from storage unit is computed in Plaintiff's FAC in paragraphs 324 – 326. Plaintiff incorporates these paragraphs by reference.<br>   a. The total amount of damages is **$2,377,337.50** |

| | |
|---|---|
| 3. Pain and suffering & mental anguish | 2. Plaintiff suffers from constant ringing in both ears as a result of being exposed to hours of loud explosions on July 4, 2021. The severity, prognosis and probability of future hearing loss need to be assessed via an audiogram and/or auditory brainstem response testing. Without this information Plaintiff is unable to compute damages for future medical expenses or other damages related to tinnitus. More discovery needed.<br><br>3. Plaintiff continues to experience pain & suffering and mental anguish related to the February 2021 Balcony Incident, July 4, 2021 Fireworks Incident, and death of Heidi Plank. Damages are to be determined by a trier of fact. |
| As to the Second Cause of Action - Premise Liability, an amount to be proven at trial for economic, noneconomic, monetary, or compensatory damages<br><br>    1. Loss of Property – Storage Unit<br>    2. Tinnitus from July 4th Fireworks<br>    3. Pain and suffering & mental anguish | **an amount to be proven at trial for:**<br><br>4. Loss of Property from storage unit is computed in Plaintiff's FAC in paragraphs 324 – 326. The total amount of damages is **$2,377,337.50**<br><br>5. Plaintiff suffers from constant ringing in both ears as a result of being exposed to hours of loud explosions on July 4, 2021. The severity, prognosis and probability of future hearing loss need to be assessed via an audiogram and/or auditory brainstem response testing. Without this information Plaintiff is unable to compute damages for |

| | |
|---|---|
| | future medical expenses or other damages related to tinnitus. More discovery needed.<br><br>Plaintiff continues to experience pain & suffering and mental anguish related to the February 2021 Balcony Incident, July 4, 2021 Fireworks Incident, and death of Heidi Plank. Damages are to be determined by a trier of fact. |
| As to the Third Cause of Action - Violation of Unruh Civil Rights Act Civil Code §§ 51 et seq., compensatory and emotional damages according to proof, and all monetary damages awarded be trebled pursuant to Civil Code § 52;<br><br>1. Overcharged for rent and utilities based on protected class status<br>2. Loss of Housing Opportunities: Refusal to lease Apartment 2914 in March 2020 and Apartment 2914 in August 2021.<br>3. Pain and suffering and mental anguish | 1. Plaintiff was overcharged at least $18,161.54 in rents, utilities, and other fees because of her protected class status.<br>   a. The damages are computed in Plaintiff's FAC in the following paragraphs: 158 - 163, 199 – 200, 332 – 334, 395-404, and 553 – 562. Plaintiff incorporates these paragraphs by reference.<br>   b. Ca. Civil Code § 52 allows this amount to be trebled to **$54,484.62**<br><br>2. Hope + Flower refused to lease Apartment #2914 to Plaintiff in March 2020 and again in August 2021, despite Plaintiff being qualified. More discovery needed to calculate damages resulting from Plaintiff's Loss of Housing Opportunities. All monetary damages awarded be trebled pursuant to Civil Code § 52; |

| | |
|---|---|
| | 3. Emotional damages to be determined by a trier of fact. All monetary damages awarded be trebled pursuant to Civil Code § 52; |
| As to the Fourth Cause of Action – Violations of Fair Housing Act (42 U.S.C. §§ 3604 et seq.), an amount to be proven at trial for monetary, or compensatory damages, and for punitive damages under 42 U.S.C. § 3613(c)(1)<br><br>    1. Overcharged for rent and utilities based on protected class status<br>    2. Loss of Housing Opportunities: Refusal to lease Apartment 2914 in March 2020 and Apartment 2914 in August 2021.<br>    3. punitive damages pursuant to 42 U.S.C. § 3613(c)(1) | **an amount to be proven at trial for:**<br><br>1. Plaintiff was overcharged at least **$18,161.54** in rents, utilities, and other fees because of her protected class status.<br>    a. The damages are computed in Plaintiff's FAC in the following paragraphs: 158 - 163, 199 – 200, 332 – 334, 395-404, and 553 – 562. Plaintiff incorporates these paragraphs by reference.<br><br>2. Hope + Flower refused to lease Apartment #2914 to Plaintiff in March 2020 and again in August 2021, despite Plaintiff being qualified. More discovery needed to calculate damages resulting from Plaintiff's Loss of Housing Opportunities.<br><br>3. Punitive damages to be determined by a trier of fact |
| As to the Fifth and Sixth Causes of Action – Malicious Prosecution, an amount to be proven at trial for economic, noneconomic, monetary, or compensatory damages.<br><br>    1. Cost of suit – December 2021 Unlawful Detainer | **an amount to be proven at trial for:**<br><br>1. More discovery needed to calculate the costs of the defending the December 2021 Unlawful Detainer<br>2. More discovery needed to calculate the costs of the defending the June 2022 Unlawful Detainer |

| | |
|---|---|
| 2. Cost of suit – June 2022 Unlawful Detainer<br>3. Emotional Distress and Mental anguish<br>4. Economic damages: compensation for time Plaintiff spent defending both lawsuits | 3. Emotional damages to be determined by a trier of fact<br>4. Plaintiff represented herself in both unlawful detainers. Plaintiff spent over twenty (20) hours drafting motions and attending hearings. Plaintiff is not an attorney thus attorney fees are not applicable.<br>    a. Compensation for Plaintiff's time can be calculated based on Plaintiff's billable hourly rate as a consultant. Plaintiff's hourly consultancy rate ranges from $150 – 400.00 per hour.<br>    b. Plaintiff justifies her hourly rates based on her educational background and years of experience.<br>    c. Plaintiff has a Bachelor of Science in Psychology with a double minor in Biology and Chemistry, a Bachelor of Science in Nursing, and a Juris Doctorate.<br>    d. Plaintiff has over fourteen (14) years of relevant experience and provides consultancy in the following areas: International Trafficking in Arms (ITAR) consultancy, Export Administration Regulations (EAR) consultancy, Health Law and Regulatory Compliance consultancy.<br>    e. Plaintiff demands her time be reimbursed at an hourly rate of $400.00. Accordingly, twenty |

| | |
|---|---|
| | (20) hours of working on the unlawful detainers amounts to $8,000.00 |
| As to the Seventh Cause of Action – Violations of City of Los Angeles Temporary Protection of Tenants During COVID-19 Pandemic (L.A.M.C. §§ 49.99 et seq.) a civil penalty up to $10,000 per each violation, and an amount to be proven at trial for monetary damages<br><br>   1.  Civil Penalties for violating L.A.M.C. §§ 49.99 et seq<br>   2.  Monetary Damages | 1.  Defendants committed at least fifteen (15) violations of L.A.M.C. §§ 49.99. Due to blatant disregard and repeated violations, combined with Defendants' egregious and outrageous conduct, Plaintiff demands the maximum of $10,000.00 per each violation.<br>     a.  Plaintiff is aware of at least 15 violations, but more discovery is needed to uncover other violations.<br>     b.  Damages for violating L.A.M.C. §§ 49.99 is at least **$150,000.00** based on 15 violations at $10,000.00 per violation.<br><br>2.  Plaintiff suffered monetary damages resulting from Defendants' violations of L.A.M.C. §§ 49.99. However, more discovery is needed to compute the damages. |
| As to the Eighth Cause of Action – Violations of the of Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 et seq) actual and statutory damages pursuant to 15 U.S.C. § 1692k, and reasonable costs and attorneys' fees incurred in this action | 1.  More discovery needed to calculate the costs of the defending the December 2021 Unlawful Detainer<br><br>2.  More discovery is needed to calculate the costs of the defending the June 2022 Unlawful Detainer<br><br>3.  Reasonable Costs: Plaintiff demands her time be reimbursed at an hourly |

| | |
|---|---|
| 1. Costs of December 2021 Unlawful<br>2. Costs of June 2022 Unlawful Detainer<br>3. Statutory damages pursuant to 15 U.S.C. § 1692k<br>4. Attorneys' fees | rate of $400.00. Accordingly, twenty (20) hours of working on the unlawful detainers amounts to $8,000.00<br><br>   a. *See* Malicious Prosecution above, for computation for Plaintiff's hourly rate.<br><br>5. Statutory: 15 U.S.C. § 1692k allows for $1,000.00 for each violation. More discovery needed to dentine actual amount of violations.<br><br>4. Plaintiff currently appears in Pro Per, but anticipates retaining counsel, at which point an award of attorney fees can be calculated |
| As to the Ninth Cause of Action – Violations of Ca. Civ. Code § 1942.5 (Retaliation), an amount to be proven at trial for punitive, exemplary, economic, noneconomic, monetary, or compensatory damages;<br><br>1. Loss of Property – Storage Unit<br>2. Loss of Property – Apt 2814<br>3. Emotional Distress and Mental anguish<br>4. Punitive damages<br>5. Exemplary damages | **an amount to be proven at trial for:**<br><br>1. Loss of Property from storage unit is computed in Plaintiff's FAC in paragraphs 324 – 326. Plaintiff incorporates these paragraphs by reference.<br>   a. The total amount of damages is **$2,377,337.50.**<br><br>2. Plaintiff was forced to abruptly leave her apartment due to threats and safety reasons. Plaintiff left the United States with only 3 suitcases and was forced to leave her reaming belongings behind.<br>   a. Plaintiff's apartment was a fully furnished 2 bedroom and 2-bathroom apartment. |

Plaintiff's furniture was less than 3 years old.

b. Plaintiff is a novice Macallan whiskey collector and left behind a fully stocked bar; The cost of Plaintiff's Macallan whisky collection was approximately **$10,000.00**

c. The most expensive bottle was a 750mL Macallan Sherry Oak 30 year old single malt, which cost approximately $6,000.00. Plaintiff also had one 750mL Macallan Rare Cask, which cost approximately $500.00, one 750mL Macallan Estate Reserve, which cost approximately $500.00, and one 750mL Macallan 18 Year Cherry Oak, which cost approximately $400.00. The least expensive bottle of Macallan on Plaintiff's bar was a Macallan 12 year single malt that cost approximately $80.00.

d. Plaintiff had one 750mL Hennessy Obama 44th Presidential Collection - the replacement value is approximately **$5,000.00**

a. Plaintiff's wine fridge was full of 500mL San Benedetto glass still water. The wine fridge cost approximately **$500.00.**

b. More discovery is needed to calculate Plaintiff's losses

| | |
|---|---|
| | from the property left behind in Apartment 2814. |
| | 3. Emotional damages to be determined by a trier of fact. |
| | 4. Punitive damages to be determined by a trier of fact. |
| | 5. Exemplary damages to be determined by a trier of fact. |
| As to the Tenth Cause of Action – Violations of the Tom Bane Civil Right Act (Ca. Civ. Code §§ 52.1, 52 et seq.) compensatory and emotional damages according to proof, and all monetary damages awarded be trebled pursuant to Civil Code § 52;<br><br>1. Loss of Property – Storage Unit<br>2. Loss of Property – Apt 2814<br>3. Emotional Distress and Mental anguish | 1. Loss of Property from storage unit is computed in Plaintiff's FAC in paragraphs 324 – 326. Plaintiff incorporates these paragraphs by reference.<br>    a. The total amount of damages is $2,377,337.50.<br>    b. All monetary damages awarded be trebled pursuant to Civil Code § 52; thus, the total amount in damages is **$7,132,012.50.**<br><br>2. Plaintiff was forced to abruptly leave her apartment due to threats and safety reasons. Plaintiff left the United States with only 3 suitcases and was forced to leave her reaming belongings behind.<br>    a. Plaintiff's apartment was a fully furnished 2 bedroom and 2-bathroom apartment. Plaintiff's furniture was less than 3 years old.<br>    b. Plaintiff is a novice Macallan whiskey collector and left |

behind a fully stocked bar;
The cost of Plaintiff's
Macallan whisky collection
was approximately **$10,000.00**

c. The most expensive bottle was
a 750mL Macallan Sherry Oak
30 year old single malt, which
cost approximately $6,000.00.
Plaintiff also had one 750mL
Macallan Rare Cask, which
cost approximately $500.00,
one 750mL Macallan Estate
Reserve, which cost
approximately $500.00, and
one 750mL Macallan 18 Year
Cherry Oak, which cost
approximately $400.00. The
least expensive bottle of
Macallan on Plaintiff's bar
was a Macallan 12 year single
malt that cost approximately
$80.00.

d. Plaintiff had one 750mL
Hennessy Obama 44th
Presidential Collection - the
replacement value is
approximately **$5,000.00**

e. Plaintiff's wine fridge was full
of 500mL San Benedetto glass
still water. The wine fridge
cost approximately **$500.00.**

f. All monetary damages
awarded be trebled pursuant to
Civil Code § 52;

g. More discovery is needed to
calculate Plaintiff's losses
from the property left behind
in Apartment 2814.

| | |
|---|---|
| | 3. Emotional damages to be determined by a trier of fact. All monetary damages awarded be trebled pursuant to Civil Code § 52; |
| As to the Eleventh Cause of Action – Violations of Tenant Anti-Harassment Ordinance (TAHO) (L.A.M.C §§ 45.30 et seq.), a civil penalty up to $10,000 per each violation, and an amount to be proven at trial for monetary damages.<br><br>1. Civil Penalty for one-hundred and twenty-four (124) TAHO violations<br>2. Monetary damages resulting from TAHO violations | 1. Defendants committed at least one-hundred and twenty-four (124) TAHO violations. Due to blatant disregard and repeated violations, combined with Defendants' egregious and outrageous conduct, Plaintiff demands the maximum of $10,000.00 per each violation.<br>    a. Plaintiff is aware of at least 124 violations, but more discovery is needed to uncover other violations.<br>    b. Damages for violating TAHO is at least **$1,240,000.00** based on 124 violations at $10,000.00 per violation.<br><br>2. Plaintiff suffered monetary damages resulting from Defendants' violations of TAHO. However, more discovery is needed to compute the damages. |
| As to the Twelfth Cause of Action – Civil RICO (18 U.S.C. §§ 1962(c), 1964(c)), Predicate Act: Honest Services Fraud (18 U.S.C. § 1346) and monetary damages<br><br>1. Loss of Property – Storage Unit | 1. Loss of Property from storage unit is computed in Plaintiff's FAC in paragraphs 324 – 326. Plaintiff incorporates these paragraphs by reference.<br>    a. The total amount of damages is $2,377,337.50. |

| | |
|---|---|
| 2. Loss of. Property – Apt 2814<br>3. Attorneys' fees | b. All monetary damages awarded be trebled pursuant to 18 U.S. Code § 1964(c); Thus, the total amount in damages is **$7,132,012.50.**<br><br>2. Plaintiff was forced to abruptly leave her apartment due to threats and safety reasons. Plaintiff left the United States with only 3 suitcases and was forced to leave her reaming belongings behind.<br>    a. Plaintiff's apartment was a fully furnished 2 bedroom and 2-bathroom apartment. Plaintiff's furniture was less than 3 years old.<br>    b. Plaintiff is a novice Macallan whiskey collector and left behind a fully stocked bar; The cost of Plaintiff's Macallan whisky collection was approximately **$10,000.00**<br>    c. The most expensive bottle was a 750mL Macallan Sherry Oak 30 year old single malt, which cost approximately $6,000.00. Plaintiff also had one 750mL Macallan Rare Cask, which cost approximately $500.00, one 750mL Macallan Estate Reserve, which cost approximately $500.00, and one 750mL Macallan 18 Year Cherry Oak, which cost approximately $400.00. The least expensive bottle of Macallan on Plaintiff's bar |

| | |
|---|---|
| | was a Macallan 12 year single malt that cost approximately $80.00. |
| | d. Plaintiff had one 750mL Hennessy Obama 44th Presidential Collection - the replacement value is approximately **$5,000.00** |
| | e. Plaintiff's wine fridge was full of 500mL San Benedetto glass still water. The wine fridge cost approximately **$500.00.** |
| | f. All monetary damages awarded be trebled pursuant to 18 U.S. Code § 1964(c). |
| | g. More discovery is needed to calculate Plaintiff's losses from the property left behind in Apartment 2814. |
| | 3. Plaintiff currently appears in Pro Per, but anticipates retaining counsel, at which point an award of attorney fees can be calculated. |
| As to the Thirteenth Cause of Action – Civil RICO (18 U.S.C. §§ 1962(c), 1964(c)), Predicate Act: Wire Fraud (18 U.S.C. § 1343), monetary damages<br><br>1. Unlawful charges for rent, utilities, and fees pursuant to a RICO scheme and/or conspiracy<br>2. Attorneys' fees | 1. Damages were calculated by trebling the total amount of overages for rent, utilities, and fees.<br>  a. As computed above, Plaintiff was overcharged at least $18,161.54. This amount was trebled per 18 U.S. Code § 1964(c), for a total of **$54,484.62.**<br><br>2. Plaintiff currently appears in Pro Per, but anticipates retaining counsel, at which point an award of attorney fees can be calculated |

| | |
|---|---|
| As to the Fourteenth Cause of Action - Violations of Bus. & Prof. Code §§ 17200 et seq. Restitution and such other relief authorized under Bus. & Prof. Code § 17203;<br><br>1. Restitution | 1. If the Defendants had not acted so egregiously and outrageous towards Stillwell, then Plaintiff would still be residing in Los Angeles, California. More discovery is needed to compute and calculate restitution and appropriate relief for Plaintiff. |
| As to the Fifteenth Cause of Action- Breach of Contract, monetary damages in the amount to be determined at trial, which will compensate Stillwell for all the detriment proximately caused by Onni and Onni-BC's breach, or the amount that, in the ordinary course of things, would be likely to result therefrom.<br><br>1. Economic Damages | **an amount to be determined at trial for:**<br><br>1. Plaintiff is still incurring damages related to Defendants' breach of contract. More discovery needed to compute economic damages. |
| As to the Sixteenth Cause of Action- Intentional Infliction of Emotional Distress, an amount to be proven at trial for punitive, exemplary, economic, noneconomic, monetary, or compensatory damages<br><br>1. Economic Damages<br>2. Emotional distress and Mental anguish<br>3. Future medical expenses<br>4. Punitive and Exemplary | **an amount to be proven at trial for:**<br><br>1. Plaintiff is still incurring damages related the Defendants' Intentional Infliction of Emotional Distress. More discovery needed to compute economic damages.<br><br>2. Damages for mental and emotional distress to be determined by a trier of fact<br><br>3. More discovery needed to compute economic damages future medical expenses. |

| | |
|---|---|
| | 4. Punitive and exemplary damages to be determined by a tier of fact |
| As to the Seventeenth Cause of Action- Negligent Infliction of Emotional Distress, an amount to be proven at trial for economic, noneconomic, monetary, or compensatory damages;<br><br>1. Economic Damages<br>2. Emotional distress and Mental anguish<br>3. Future medical expenses | **an amount to be proven at trial for:**<br><br>1. Plaintiff is still incurring damages related the Defendants' Intentional Infliction of Emotional Distress. More discovery needed to compute economic damages.<br><br>2. Damages for mental and emotional distress to be determined by a trier of fact<br><br>3. More discovery needed to compute economic damages future medical expenses. |
| an award of attorneys' fees | Plaintiff currently appears in Pro Per, but anticipates retaining counsel, at which point an award of attorney fees can be calculated |
| prejudgment interest; | 10% prejudgment interest, or the highest amount of interest allowed under law |
| exemplary and punitive damages | Amount to be determined by a trier of fact |
| costs of suit | More discovery needed to compute cost of suit |

a. Plaintiff's mental anguish and emotional distress were exacerbated due to past traumatic experiences, as described below. As a result, Plaintiff anticipates a trier of fact might take Plaintiff's past trauma into account when awarding damages.

i. <u>February 2021 Balcony Incident:</u> Plaintiff's mental anguish and emotional distress were exacerbated by a past traumatic experience. Plaintiff was pushed out a 5th floor window, and dangled headfirst until help arrived, similarly to the person in the Balcony Incident Video. Plaintiff was severely cut by the glass from the window and required many stitches.

ii. <u>Heidi Plank's death:</u> Plaintiff's mental anguish and emotional distress were exacerbated by a past traumatic experience. Plaintiff's brother was brutally killed, and the witnesses refused to cooperate with the prosecutor after being threatened by the killer's family. The witnesses chose their safety over justice for Plaintiff's brother. Plaintiff was forced to relive this tragedy, and reconcile several uncomfortable truths, as Plaintiff found herself having to choose her own safety over justice for Heidi Planck due to harassment and threats.

iii. <u>Storage Unit Theft:</u> Plaintiff's mental anguish and emotional distress were exacerbated by a past traumatic experience. On August 29, 2005 Stillwell lost most of her childhood photos during the aftermath of Hurricane Katrina. Sixteen years later, on August 29, 2021, Stillwell discovered the storage theft. All of

Stillwell's remaining family photos - including the only photo she had of her biological mother, family heirlooms, including her family's oral history were taken. Plaintiff's reason for going to her storage unit on August 29, 2021 was to retrieve items for her father's funeral. Plaintiff is now the last Stillwell in her family's lineage and has lost everything that reminds her of family. This erasure of Stillwell's familial history continues to cause Plaintiff mental anguish and emotional distress.

iv.  <u>Request to Install Surveillance Cameras:</u> In September 2021, less than one month prior to Heidi Planck's death, Stillwell provided Hope + Flower with a copy of police report in which Stillwell detailed credible death threats. Stillwell asked to install security cameras after her co-tenant described the many ways a person could kill Stillwell at Hope + Flower - and get away with it. Despite being made aware of the security flaws at Hope + Flower, management took no actions to ensure Stillwell's safety. Less than a month later, a corpse, believed to be Heidi Planck, was pulled from the trash chute of Stillwell's apartment.

1.  (Stillwell was falsely accused of corporate espionage and "setting up" the CEO of a company ("Doe Company") that

PLAINTIFF'S INITIAL DISCLOSURES

was in litigation with a company that was wholly owned by Stillwell ("TCF"). In June 2021 the CEO of Doe Company was the target of a robbery that left at least one person dead. The CEO's personal and Doe Company servers were also hacked. Stillwell's co-tenant conspired with the CEO of Doe Company to retaliate against Stillwell, including making credible threats to kill Stillwell.

2. The cameras Stillwell installed for safety incidentally captured unnerving & unsettling footage of many of the incidents alleged in Stillwell's First Amended Complaint.

v. Commercial Litigation: The loss of Property stolen from Stillwell's storage unit resulted in Stillwell being unable to afford legal representation for a retaliatory suit that was filed by Doe Company, against TCF. (TCF's commercial insurer denied coverage of the claim in September 2021, at which point Stillwell became responsible for retaining counsel for TCF.) Stillwell learned about the storage unit theft on August 29, 2021. As a result of the storage unit theft, a default judgment of $360,000.00 was entered against TCF. Stillwell was forced to furlough

hundreds of employees and was unfairly blamed for the theft. Plaintiff continues to experience severe mental anguish and emotional distress related to the litigation of TCF and Doe Company.

      vi.  At the time of filing this Disclosure, Stillwell still experiences mental anguish, and fear. Stillwell has not returned to the United States of America since January 2023, when she abruptly left for safety reasons.

   b.  Plaintiff reserves the right to amend once other damages are made known to her through regular discovery procedures, or otherwise.

## 4. INSURANCE

This section of Fed. R. Civ. P. Rule 26, specifically subd. (a)(1)(A)(iv), is not applicable to the Plaintiff.

Dated: November 9, 2023

                    ___/s/Brittany A. Stillwell_____,
                       Brittany A. Stillwell, *Plaintiff*
                       Appearing in Pro Per