1
2
3
4
5

Brittany A. Stillwell
info@brittstillwell.com
8 Century Avenue, IFC Tower 2, Floor 8
Pudong District, Shanghai, China 200120
Tel: 702-907-1908

PLAINTIFF APPEARING IN PRO PER

6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTICT OF CALIFORNIA**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| **BRITTANY A. STILLWELL**<br><br>Plaintiff,<br><br>v.<br><br>**ONNI REAL ESTATE IX, LLC,** a Delaware limited liability company; **ONNI REAL ESTATE HOLDINGS LTD** a Canadian limited corporation; **KIMBALL, TIREY & ST. JOHN LLP,** a Louisiana Debt Collection Agency, **CHRIS JAMES EVANS,** an individual; **and DOES 1 though 7 INCLUSIVE**<br><br>Defendants. | Case No. 2:22-cv-09426-JWH-JC<br><br>**FIRST AMENDED COMPLAINT** against **ONNI REAL ESTATE IX, LLC,** a Delaware limited liability company; **ONNI REAL ESTATE HOLDINGS LTD** a Canadian limited corporation; **KIMBALL, TIREY & ST. JOHN LLP,** a Louisiana Debt Collection Agency, **CHRIS JAMES EVANS,** an individual**; and DOES 1 though 7 INCLUSIVE** for:<br>1. **Negligence;**<br>2. **Premise Liability;**<br>3. **Violations of Unruh Civil Rights Act, Ca. Civ. Code §§ 51, 52** *et seq.***;**<br>4. **Violations of Fair Housing Act (42 U.S.C. §§ 3604** *et seq.);*<br>5. **Malicious Prosecution (December 2021 Unlawful Detainer);**<br>6. **Malicious Prosecution (June 2022 Unlawful Detainer);**<br>7. **Violations of City of Los Angeles Temporary Protection of Tenants During COVID-19 Pandemic (L.A.M.C. §§ 49.99** *et seq.***);** |

8. **Violations of Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 *et seq)*;**
9. **Violations of Ca. Civ. Code § 1942.5 (Retaliation)**
10. **Violations of Tom Bane Civil Rights Act (Ca. Civ. Code §§ 52.1, 52 *et seq).;***
11. **Violations of Tenant Anti-Harassment Ordinance (TAHO) (L.A.M.C §§ 45.30 *et seq*.);**
12. **Civil RICO (18 U.S.C. §§ 1962(c), 1964(c)),** Predicate Act: Honest Services Fraud (18 U.S.C. § 1346)**;**
13. **Civil RICO (18 U.S.C. §§ 1962(c), 1964(c)),** Predicate Act: Wire Fraud (18 U.S.C. § 1343)**;**
14. **Violations of Unfair Competition Law (Bus. & Prof. Code §§ 17200 *et seq.);***
15. **Breach of Contract**
16. **Intentional Infliction of Emotional Distress; and**
17. **Negligent Infliction of Emotional Distress**

**JURY TRIAL DEMANDED**

Plaintiff Brittany A. Stillwell submits this Second Amended Complaint under penalty of perjury pursuant to Ca. Civ. Code §§ 446 and 2015.5 that the facts and statements contained herein are true and correct. Under penalty of perjury, Plaintiff Brittany A. Stillwell alleges:

## INTRODUCTION

1.     Plaintiff Brittany Stillwell ("Stillwell") files this verified Complaint against her landlords, Onni Real Estate IX, LLC ("Onni") and Onni Real Estate Holdings Ltd. ("Onni-BC"), attorney Chris James Evans ("Evans"), and debt collection agency Kimball, Tirey & St. John LLP ("KTS").

SECOND AMENDED COMPLAINT
- 1 -

2.      Upon information and belief every document incorporated by reference in this verified Complaint is in the possession of the Plaintiff and or each Defendant and is discoverable.

## PARTIES

3.   Plaintiff Brittany Stillwell ("Stillwell") is a natural person and citizen of the United States of America. Stillwell no longer resides in the United States of America. Her address is in Shanghai, China.

4.      Defendant Onni Real Estate IX, LLC ("Onni") is incorporated as a limited liability corporation in Delaware, with its headquarters and principal location in Phoenix, Arizona. At all relevant times and as mentioned in this Complaint, Onni was doing business as Hope + Flower located at 1201 S. Hope Street, Los Angeles, California 90015.

5.      Upon information and belief, Defendant Onni Real Estate Holdings LTD ("Onni-BC") is a Canadian limited corporation incorporated in Vancouver, British Columbia, Canada. Onni Group's headquarters is located at 1010 Seymour Street, Suite 200, Vancouver, British Columbia, Canada V6B 3M6. Onni Group's principal location is in the United States of America at 1031 S. Broadway, Suite 400, Los Angeles, California 90015.

   a.   Onni Group is an enterprise, as defined by 18 U.S.C. § 1961(4).

6.      Upon information and belief and according to the Louisiana Secretary of State, Defendant, Kimball, Tirey & St. John LLP ("KTS") is incorporated as a "Collection Agency/ Debt Collector" pursuant to Louisiana's Debt Collector Registration statute, R.S. 9:3534.5, with its principal business office address located at "1202 Kettner Blvd.  San Diego, California 92101."

   a.   KTS holds itself out as a law firm with its Los Angeles office located 915 Wilshire Boulevard, Suite 1650, Los Angeles County, California 90017.

SECOND AMENDED COMPLAINT
- 2 -

7. Upon information and belief, Defendant Chris James Evans ("Evans") is an individual who resides in Los Angeles County, California.

8. Defendants KTS and Evans each are engaged in the business of collecting debts, using mail and telephone in this state with its principal place of business located at 915 Wilshire Boulevard, Suite 3400, Los Angeles, CA 90071

    a. Defendants KTS and Evans each are engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

    b. Defendants KTS and Evans each regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

    c. Defendants KTS and Evans are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

9. Whether individual, corporate, associate, or otherwise, defendants' true names and capacities DOES 1 through 7, (hereafter, "Doe Defendants") are unknown to Plaintiff currently. Therefore, Plaintiff sues those defendants by such fictitious names pursuant to Ca. Code Civ. P. § 474 will amend this Complaint to show their true names and capacities when ascertained.

10. Plaintiff is informed, believes, and based thereon alleges, that at all times relevant, each Defendant was acting as an agent, joint venturer, and/or alter ego for each of the other Defendants, and each were co-conspirators with respect to the acts and the wrongful conduct

alleged herein so that each is responsible for the acts of the other in connection with the conspiracy in such wrongful acts with the other Defendants.

11.     Plaintiff is informed, believes, and based thereon alleges, that each Defendant was acting partly within and partly without the scope and course of their employment, and was acting with the knowledge, permission, consent, and ratification of every other Defendant.

12.     Plaintiff is informed and believes, and therefore alleges, that each of the Defendants was an agent, managing general partner, managing member, owner, co-owner, partner, employee, and/or representative of each of the Defendants and was at all times material hereto, acting within the purpose and scope of such agency, employment, contract and/or representation, and that each of them is jointly and severally liable to plaintiff.

13.     Plaintiff is informed and believes, and therefore alleges, that each of the Defendants is liable to plaintiff under legal theories and doctrines including but not limited to (1) joint employer; (2) integrated enterprise; (3) agency; and/or (4) alter ego, based in part, on the facts set forth below.

14.     Plaintiff is informed and believes, and therefore alleges, that each of the named Defendants are part of an integrated enterprise and have acted or currently act as the employer and/or joint employer of plaintiff making each of them liable for the violations alleged herein.

**JURISDICTION & VENUE**

15.     Under 28 U.S. Code § 1391(d) a corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state. Accordingly, Jurisdiction is proper in this Court because Defendants Onni, Onni-BC, Evans, and KTS are located in Los Angeles County and work

and or conduct business in Los Angeles County, thus having sufficient contacts with Los Angeles County, California to subject each Defendant to personal jurisdiction in this Court's district.

16.     Defendants KTS and Evans, collect debt and are headquartered in Los Angeles, California. Accordingly, this court has jurisdiction of the federal claims against KTS and Evans pursuant to 15 U.S.C. § 1692k(d).

17.     Defendants KTS and Evans has actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed themselves to the jurisdiction in which Plaintiff resided. Defendants KTS and Evans knowingly attempted to collect on a debt allegedly incurred in Los Angeles, California and thus has sufficient minimum contacts with this venue. Venue is additionally proper under 28 U.S. Code § 1391(b)(1).

18.     Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. The acts that occurred giving rise to this complaint occurred in Los Angeles County, California. Defendants Onni, Onni-BC, Evans, and KTS have sufficient minimum contacts with this venue, thus making this a proper venue under 28 U.S. Code § 1391(b)(2).

19.     The amount in controversy, of Stillwell's state claims, exceeds $75,000.00.

20.     The amount in controversy, of Stillwell's federal claims, exceeds $75,000.00.

21. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction).

22. This Court has jurisdiction over this action under 28 U.S.C. § 1332 (federal diversity jurisdiction).

SECOND AMENDED COMPLAINT

- 5 -

23. This Court has jurisdiction over the state law claims in action under 28 U.S.C. § 1367 (supplemental jurisdiction).

24. Venue is properly vested in this Court under 28 U.S.C. § 1391(e), because the Defendants work and reside in this district and a substantial part of the events and omissions which gave rise to this action occurred in this district. Defendants LA City, Onni, and Onni-BC have sufficient minimum contacts with this venue, thus making this a proper venue under 28 U.S. Code § 1391(b)(2).

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**Hope + Flower Apartments**

25.     Hope + Flower Apartments ("Hope + Flower") is located at 1201 S. Hope Street, Los Angeles, California 90015, in City Council District 14 ("CD14"). Hope + Flower is not zoned or licensed to be a hotel, motel, or boarding house as required by Los Angeles County Municipal Code ("L.A.M.C.") § 7.50.020.

26.     Upon information and belief, in June 2020 Onni began converting more than 40% of its apartments at Hope + Flower to short term rentals, hotels, and Airbnb rentals. During this time many Hope + Flower residents, including Stillwell, began to complain to Onni about the increase in crime at Hope + Flower caused by transient guests.

27.     Upon information and belief, Onni converted hundreds of Residential Units to commercial use and or and tourists' units, then passed its commercial costs of utilities to residents of Hope +Flower, including the costs of at least forty (40) Electrical Vehicle charging and the utilities of more than two hundred (200) units that were illegally converted into a hotel or short-term rentals.

**Housing Discrimination**

28. Stillwell is a 40-year-old is an unmarried, Black, African American woman with Native American ancestry. Stillwell resided at Hope + Flower apartments from March 2020 until April 2023.

29. From March 2020 until June 2021, Stillwell resided at Hope + Flower with a co-tenant Felix Felder ("Felder"). Felder is a 38-year-old Black, African American man.

**Discrimination because of Marital Status / Color/Race: Apartment #2914**

30. On March 9, 2020, Onni knowingly and intentionally offered Stillwell inferior terms, conditions, privileges, or services in connection with renting Apartment #2914 because of Stillwell's race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R. § 100.60(a)(3), and 24 C.F.R. §100.50(b)(2).

31. On March 13, 2020, Onni knowingly and intentionally excluded Stillwell's source of income so that it could refuse Stillwell's bona fide offer, because of Stillwell's race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(a), 24 C.F.R. § 100.60(a), and 24 C.F.R. §§100.50(b)(1) and 100.50(b)(3).

32. On March 13, 2020, Onni knowingly and intentionally used more stringent criterion to disqualify Stillwell from renting apartments at Hope + Flower with monthly rents that exceeded $3,600.00, because of Stillwell's source of income, race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R. §§ 100.60(b)(2) and 100.60(b)(3), and 24 C.F.R. §§100.50(b)(2) and 100.50(b)(3).

33. On March 13, 2020, Onni knowingly and intentionally excluded Stillwell's source of income so that it could refuse leasing Apartment #2914 to Stillwell, because of Stillwell's source of income, race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code

§ 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R. §§ 100.60(b)(2) and 100.60(b)(3), and 24 C.F.R. §§100.50(b)(2) and 100.50(b)(3).

34. On March 13, 2020, Onni informed Stillwell that Felder's income could not be considered to determine Stillwell income qualifications, since Felder's credit report was still pending.

35. Pursuant to Cal. Gov. Code § 12955(n), it is unlawful for landlords to use a financial or income standard in the rental of housing that fails to account for the aggregate income of persons residing together or proposing to reside together on the same basis as the aggregate income of married persons residing together or proposing to reside together.

36. Pursuant to 24 C.F.R. § 100.60(b)(4), its unlawful to use different qualification criteria or applications, or different rental standards or procedures, such as income standards, application requirements, application fees, credit analysis or sale or rental approval procedures or other requirements, because of race, color, religion, sex, handicap, familial status, or national origin.

37. Upon information and belief, at all relevant times, Onni used the aggregate gross incomes of similarly situated, unmarried persons residing together or proposing to reside together in determining whether applicants met its income criterions.

38. On March 13, 2020, Onni knowing and intentionally excluded Felder's income and refused to use the aggregate gross incomes of Stillwell and Felder because they were unmarried, and so that it could refuse leasing Apartment #2914 to Stillwell in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a).

39. Upon information and belief, at all relevant times, Onni used the aggregate gross incomes of similarly situated persons outside of Stillwell's protected classes residing together or proposing to reside together in determining whether applicants met its income criterions.

40. On March 13, 2020, Onni knowing and intentionally excluded Felder's income and refused to use the aggregate gross incomes of Stillwell and Felder so that it could refuse leasing Apartment #2914 to Stillwell, because of Stillwell's race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R. §§ 100.60(a) and 100.60(b)(4), and 24 C.F.R. §§100.50(b)(2) and 100.50(b)(3).

41. Onni's offer to lease Apartment #2914 to Stillwell at a higher rent is an inferior term, conditions, privileges, or services, and is an act of discrimination as defined by Cal. Gov. Code § 12927(c)(1), a discriminatory housing practice as defined by 42 U.S.C. § 3602(f), and unlawful housing discrimination as defined by 24 C.F.R. §§ 100.50 (b)(2) and 100.50 (b)(3).

42. Onni's use of an "occupant screening" application, refusal to consider Felder's income, and its different income requirements, rental standards, and qualification criteria for Stillwell to lease Apartment #2914 are all acts of discrimination as defined by Cal. Gov. Code § 12927(c)(1), a discriminatory housing practice as defined by 42 U.S.C. § 3602(f), and unlawful housing discrimination as defined by 24 C.F.R. §§ 100.50 (b)(2) and 100.50 (b)(3), and 24 C.F.R §§ 100.60(a) and 100.60(b)(4).

43. On March 13, 2020, Onni knowingly and intentionally offered Stillwell higher rates and used different qualification criteria to discourage Stillwell from renting for Apartment #2919, because of Stillwell's race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R §§ 100.60(b)(3) and 100.60(b)(4), and 24 C.F.R § 100.70(c)(1).

**Inferior Leasing Terms: Apartment #2118**

44. On March 14, 2020, in connection with renting Apartment #2118, Onni knowingly and intentionally offered Stillwell inferior terms, conditions, privileges, or services when it offered Stillwell  four (4) weeks of free rent and no $500.00 move-in credit, because of Stillwell's race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R. § 100.60(a)(3), and 24 C.F.R. §100.50(b)(2).

45. Onni offered Stillwell inferior terms, conditions, privileges, and or services for Apartment #2118, because of Stillwell's race and or color in violation on the following dates: March 13, 2020, March 14, 2020, March 16, 2020, March 17, 2020, March 18, 2020, May 23, 2020, May 25, 2020. Onni's conduct is an act of discrimination as defined by Cal. Gov. Code § 12927(c)(1), a discriminatory housing practice as defined by 42 U.S.C. § 3602(f), and unlawful housing discrimination as defined by 24 C.F.R. §§ 100.50 (b)(2) and 100.50 (b)(3), and 24 C.F.R. § 100.70.

**RICO Scheme #1 Unlawfully Withholding Tenant Deposits**

46. On September 1, 2020, Onni informed Stillwell that her $500 deposit for Apartment #2118 would become the deposit for Apartment #2814 since there was no damage in Apartment #2118.

   a. In September 2020, Onni failed to return Stillwell's $500 deposit for Apartment #2118, and never provided Stillwell an itemized statement of deductions, in violation of Cal. Civ. Codes §§ 1959.5 and 1940.5(g)

**Overcharged Rent for Apartment #2118**

47. Upon information and belief, Onni advertised and quoted a Stillwell higher rent for Apartment #2118 than similarly situated persons outside of Stillwell's protected classes.

48. From March 17, 2020 until August 31, 2020, Onni overcharged Stillwell for rent six (6) times. Onni overcharged Stillwell at least $180.00 per month to rent Apartment #2118, because of Stillwell's race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R. § 100.60(a)(3), and 24 C.F.R. §100.50(b)(2).

**Second Refusal to Lease Apartment #2914**

49. On August 24, 2020, and August 27, 2020, Onni misrepresented to Stillwell that Apartment #2914 was not available for lease because of Stillwell's race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(d), and 24 C.F.R. §§ 100.50 (b)(3) and 100.50 (b)(5).

50. On August 26, 2020, Onni offered Stillwell inferior terms, conditions, privileges, and or services for Apartment #2814, because of Stillwell's race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R. § 100.60(a)(3), and 24 C.F.R. §100.50(b)(2).

**Inferior Leasing Terms (Apartment #2814): August 2020 Lease**

51. On or about August 28, 2020, Onni agreed to honor its advertisement of ten (10) weeks free rent and offered to rent Stillwell Apartment #2814 with the monthly rent of $4158.00. According to Onni, the monthly rent of $4158.00 was equivalent to ten weeks of free rent, based on a 13-month lease.

52. On August 31, 2020, less than 24 hours before Stillwell was to take possession of Apartment #2814, Onni emailed Stillwell the lease for Apartment #2814. The monthly rent stated in the lease was $4752.00, not $4158.00. The lease also included a rental "concession" in the amount of $8,316.00, which was equivalent to seven (7) weeks of rent.

Applying Onni's calculation for rent, the rent for Apartment #2814 was now equivalent to $4,112.00 per month.

53. On August 31, 2020, the rent Onni offered Stillwell for Apartment #2814 was approximately $274.00 per month *more* expensive than the rates offered to similarly situated persons outside of Stillwell's protected classes.

54. On August 31, 2020, after Stillwell complained to Onni about the terms, Onni informed Stillwell that if she did not accept the new lease terms, then Stillwell would vacate Apartment #2118 by 11:59PM on September 1, 2020, pursuant to her Move-Out Notice.

55. On August 31, 2020, Stillwell was forced to accept Onni's new rental terms and higher rent, or risk being homeless during the height of the COVID-19 pandemic.

56. On August 31, 2020, Stillwell signed a thirteen (13) month lease for Apartment #2814. The rent amount was $4,752.00 per month.  The lease agreement began on September 1, 2020 and ended on October 31, 2021 ("August 2020 Lease"). The August 2020 Lease was a legally valid and enforceable contract.

57. On August 28, 2020 and On August 29, 2020, Onni offered Stillwell inferior terms, conditions, privileges, and or services for Apartment #2814, because of Stillwell's race and or color, in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R. § 100.60(a)(3), and 24 C.F.R. §100.50(b)(2).

**Overcharged Rent for Apartment #2814: August 2020 Lease**

58. Upon information and belief, Onni advertised and quoted a Stillwell higher rent for Apartment #2814 than similarly situated persons outside of Stillwell's protected classes.

59. From September 1, 2020 until October 31, 2021, Onni overcharged Stillwell for rent thirteen (13) times. Onni overcharged Stillwell at least $274.00 per month to rent

Apartment #2814, because of Stillwell's race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R. § 100.60(a)(3), and 24 C.F.R. §100.50(b)(2).

**Tenant Anti- Harassment Ordinance ("TAHO"): L.A.M.C. §§ 45.30 _et. seq._**

60. On June 23, 2021, the Los Angeles City Council adopted the Tenant Anti- Harassment Ordinance #187109 ("TAHO") which prohibits the landlord's knowing and willful harassment directed at a specific tenant or tenants. TAHO applies to all residential units in the City of Los Angeles. TAHO is codified under L.A.M.C. §§ 45.30 45.30 _et. seq_ and became effective August 6, 2021.

61. Under TAHO, the unlawful harassing behavior must cause detriment or harm, such as an overpayment in rent, property damage, or wrongful eviction. Further, the harassing conduct must have no lawful purpose. TAHO also makes violations a criminal offense. Stillwell incorporates TAHO, L.A.M.C. §§ 45.30 45.30 _et. seq l,_ by reference.

62. Onni and Onni-BC are landlords as defined by L.A.M.C. § 45.32. Stillwell is a tenant as defined by L.A.M.C. § 45.32.

63. From September 1, 2021, until October 31, 2021, Onni knowingly and willfully overcharged Stillwell for rent twice for Apartment #2814, because of Stillwell's race and or color in violation of L.A.M.C. § 45.33(13). Each act constitutes a separate TAHO violation.

**Stillwell Complaints About Safety**

64. Onni was made aware of the of the alleged unsafe conditions and discriminatory practices at Hope + Flower because Onni replied and acknowledged YELP reviews from Hope + Flower residents that raised such concerns.

65. Onni was aware of the crime occurring at Hope + Flower Apartments, as leaders of the Tenant Group often emailed Onni the concerns of its residents, often including video and photos of criminal conduct. Many residents, including Stillwell, also complained about the crime on sites like Yelp.

66. In December 2020, after a rash of thefts from residential units, tenants at Hope + Flower raised the safety concerns with Onni and asked for surveillance cameras to be installed in the hallways on all residential floors.

67. Onni declined to install cameras in the hallways and refused and continues to refuse to allow residents to install doorbell cameras, despite the rising crime and ongoing criminal activity at Hope + Flower. At all relevant times, Onni placed the privacy of criminals over the safety of Hope + Flower residents.

**Balcony Incident: February 21, 2021**

68. On February 21, 2021, at approximately 3:40AM Stillwell was awaken by yells and screams for help. Stillwell went to her balcony and witnessed what she believed to be a person being thrown off a balcony in the Hope Tower. Upon information and belief, the incident occurred in an apartment that was leased as a short-term rental under Level Hotel and transpired after a 'drug deal went bad.'

 a. On February 21, 2021, Stillwell followed up Onni regarding the incident and to express her concerns about safety and the lack of response from the concierge and security. A property manager laughed at Stillwell in front of several other Onni employees and told Stillwell that she was "hallucinating" because the incident "simply did not happen."

**Balcony Incident: July 4, 2021**

SECOND AMENDED COMPLAINT
- 14 -

69. On July 4, 2021, Stillwell informed Onni multiple times that residents and guests of Hope +Flower were shooting fireworks from the parking lot located across from Hope Tower, on 12th and Hope Streets.

70. On July 4, 2021, Stillwell was injured after a firework, originating from the parking lot on 12th and Hope Streets, was shot into the Hope Tower.

71. On July 4, 2021, Stillwell was injured after being exposed to more three (3) hours of bright flickering lights and extremely loud bursts of sound while inside her apartment.

72. On or about July 5, 2021, Stillwell complained to Onni about her injuries, and the glass on Stillwell's balcony. Onni denied that fireworks were shot into Hope Tower.

73. Onni was aware of residents shooting fireworks from Hope + Flower balconies and from the parking lot located on 12th and Hope Streets as early as October 2020 and took no actions to stop residents and guests of Hope + Flower from using illegal fireworks.

74. Under Cal. Civ. Code § 1942.5(d) it is illegal for a landlord to retaliate against a tenant who has lawfully and peaceably exercised any rights under the law.

75. Stillwell's complaints to Onni regarding the July 4, 2021 Balcony incident and other unsafe or illegal living conditions at Hope + Flower were lawful, peaceful and protected activities under, Cal. Civ. Code § 1942.5(d)

**Locker Room A2: Storage Unit #21**

76. On November 7, 2020, Stillwell signed an addendum to the August 2020 Lease to lease Space 05, Storage Unit #21, located inside Locker Room A2, for $100.00 per month, ("Storage Addendum"). The Storage Addendum became effective November 7, 2020 and ended on October 31, 2021, the same date as the August 2020 Lease.

SECOND AMENDED COMPLAINT

- 15 -

77. Stillwell's storage unit was not subjected to the California Self-Service Storage Facility Act, Bus. & Prof. §§ 21700-21716 et seq.

78. Stillwell's tenancy rights for her storage unit were the same as the Stillwell's tenancy rights for Apartment #2814.

**Storage Unit: Retaliation / Unlawful lockout / Unlawful Eviction**

79. On August 29, 2021, Stillwell was unable to access Storage Unit #21 because Locker Room A2 was locked with a chain and lock.

80. Under Ca. Civil Code § 789.3(b), lockouts are illegal, and a landlord cannot prevent the tenant from gaining reasonable access to the property by "changing the locks or using a bootlock or similar methods." Tenants may only be removed from the property by a sheriff acting pursuant to a court order. An unlawful lockout is punishable as a crime under California Penal Code § 418.

81. On August 29, 2021, the door of Locker Room A2 contained an undated letter, ("Storage Letter"), which stated:

> We are currently doing storage renovations and will need to relocate you into a new storage unit. Please take this as our written 18-day notice. We asked that you please contact us at your earliest convenience at the email below. HFresidentservices@onni.com.

82. Onni did not inform Stillwell that her storage unit was being renovated, or her belongings were being relocated.

83. Upon information and belief, at all relevant times, Stillwell was the only Black, and African American leasing a storage unit in Locker Room A2.

SECOND AMENDED COMPLAINT
- 16 -

84. On August 29, 2021, there did not appear to be any renovations, or preparations for renovations, as more than eighty percent (80%) of the occupied storage units inside Locker Room A2 had not been relocated.

85. Upon information and belief, Stillwell was the only resident whose property was "relocated" due to Onni's alleged renovations of Locker Room A2.

86. On August 29, 2021, Stillwell had not surrendered the premises and there was no emergency, or law reason for Onni to enter Stillwell's storage unit.

87. Pursuant to Ca. Civil Code §1954, Onni was required to serve Stillwell at least a 24-hour notice and obtain Stillwell's consent before entering her storage unit. Under Ca. Civil Code §1940.2 (a)(4) it unlawful Commit a significant and intentional violation of Ca. Civil Code §1954.

88. Upon information and belief, sometime in July 2021, Onni knowingly and willingly evicted Stillwell from her storage unit to retaliate against Stillwell for her complaints about the July 4, 2021, Balcony Incident, violation of Cal. Civ. Code § 1942.5(d)

89. On or about August 29, 2021, Onni used threat, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion with Stillwell's exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California, in violation of Ca. Civil Code §52.1.

90. Onni's conduct related to the Storage Unit #21 lockout and eviction of Stillwell was menacing conduct constituting a course of conduct that interfered with Stillwell's quiet enjoyment of the premises and created an apprehension of harm in Stillwell in violation of Cal. Civ. Code §§ 1927 and §1940.2 (a)(3).

SECOND AMENDED COMPLAINT
- 17 -

91. Onni has a duty to provide Stillwell with quiet enjoyment of the premises, pursuant to Ca. Civil Code §1927.

92. Physically removing Stillwell's possessions from her storage unit and changing the locks to the unit and/or blocking the Stillwell access to her storage unit is an illegal eviction tactic that violates Ca. Civil Code §§ 789.3(b) and 1940.2 (a)(3).

93. Sometime in June 2021, Onni had actual knowledge of the unsafe conditions surrounding its locker rooms and storage units and Hope + Flower and failed to take reasonable precautions to prevent foreseeable injuries.

94. Onni failed to inform Stillwell of the unsafe conditions once it became aware of unsafe condition. The theft of Stillwell's belongings from Storage Unit #21 was a foreseeable injury.

95. Stillwell would have removed all of her belongings from Storage Unit #21 if she knew about thefts and storage break-ins in June 2021.

**Property Stolen From Storage**

96. The following electronic devices stolen from Storage Unit #21 contain information required for Stillwell to access an undisclosed amount of assets belonging to Plaintiff and a company wholly owned by Stillwell, The Compliance Firm LLC:

   a. A USB containing Stillwell's passphrase for thirty (30) bitcoins, one laptop, a portable hard drive, two cellular phones, and three sim cards from three different countries that Stillwell used abroad for business purposes;

   b. On August 29, 2021, the opening price of one Bitcoin was $48,911.25 USD; and

   c. On August 29, 2021, Stillwell's thirty (30) Bitcoins were worth a total of $1,467,337.50 USD.

SECOND AMENDED COMPLAINT

- 18 -

d.   The theft of Stillwell's cryptocurrency prevented Stillwell from retaining legal counsel to represent her company, The Compliance Firm LLC ("TCF") in several court cases. As a result, a $360,000 default judgement against TCF in a lawsuit that was barred and pre-empted by the PREP Act[1]

97. The following items were also stolen from Storage Unit #21:

a.   More than $50,000.00 worth of Stillwell's home goods, jewelry, and personal and business property that were imported to the United States from Stillwell's former residence abroad;

b.   Stillwell's citizenship documents needed for her Native American tribal enrollment in the Muscogee (Creek) Nation of Oklahoma, including Stillwell's birth certificate and social security card; and

c.   Stillwell's family heirlooms, family photos and historical documents, including ancestral wills and deeds to more than one-hundred and twenty (120) acres located in Okmulgee County, Oklahoma. Upon information and belief, the land willed and deeded to Stillwell is worth approximately $500,000.00.

d.   Plaintiff is the last *Stillwell* of her family's lineage and will not be able to replace her family's historical documents, some of which dated back to the early 1800s.

98. Onni's dishonesty, lack of care, and overall handling of the theft of Stillwell's property caused Stillwell severe emotional distress, and pain and suffering.

**Unauthorized Storage Unit fees:**

---

[1] FN Logistics, LLC v. The Compliance Firm LLC, et al. (Case No. 22STCV0144) pending in California Superior Court of Los Angeles County

SECOND AMENDED COMPLAINT

- 19 -

99. On August 29, 2021, Onni refused to provide Stillwell with a temporary location to use as a storage unit, while Onni completed its alleged renovations.

100.    From August 29, 2021 until October 31, 2021, Onni over-charged Stillwell at least three (3) months of storage fees for Storage Unit #21, which Stillwell did not have access due to Onni's unlawful lockout and subsequent eviction.

101.    From November 1, 2021 until the time of filing this Complaint, Onni has over-charged Stillwell at least fifteen (15) months of storage fees for Storage Unit #21, which Stillwell does not have access to and did not agree to rent beyond October 31, 2021.

    a.   On November 1, 2021, Onni knowingly and willing charged Stillwell *twice* for Storage Unit #21.

    b.   Onni owes Stillwell a credit of at least $1,500.00 for overcharging Stillwell at least fifteen (15) times for storage rental fees.

102.    Onni knowingly and willfully overcharged Stillwell for Storage Unit #21 in violation of Cal. Civ. Code § 1942.5 and has not refunded or credited Stillwell's account.

**Discrimination & Retaliation related to Storage Unit**

103.    With respect to Storage Unit #21, Onni knowingly and willfully discriminated against Stillwell on account of her protected classes of color and race, in violation of Cal. Civ. Code § 51(b) and 42 U.S.C. §§ 3604, 3617, and did not subject similarly situated persons outside of Stillwell's protected classes to the following adverse actions:

    a.   Unlawful lockout and evictions after complaining about safety issues;

    b.   Overcharging monthly storage fees despite no Storage Addendums being in force;

    c.   Overcharging monthly storage fees despite having no access to the storage unit;

SECOND AMENDED COMPLAINT

- 20 -

d.   Failure to Notify Stillwell of Locker Room A2 renovations, or that her belongings were being relocated;

e.   Failure to Notify Stillwell of any alleged storage unit burglaries or theft;

f.   Entering Stillwell's storage unit without notice or consent as required by Ca. Cvil Code § 1954; and

g.   Physically removing Stillwell's possessions from her storage unit.

104.     From August 2021, until the filing of this Complaint, Onni knowingly and willfully overcharged Stillwell for Storage Unit #21, in violation of Civ. Code §§ 51(b), 1942.5(d), 42 U.S.C. §§ 3604, 3617, and L.A.M.C. § 45.33(13). Each of the more than fourteen (14) acts constitutes a separate act of discrimination, retaliation and a separate TAHO violation.

**Discrimination related Lease Renewals (September-October 2021 & December 2022)**

105.     With respect to the lease renewals for Apartment#2814, from September 2021 until the filing of this Complaint; Onni knowingly and willfully discriminated against Stillwell on account of her protected classes of color and race, in violation of Cal. Civ. Code § 51(b) and 42 U.S.C. § 3604, and did not subject similarly situated persons outside of Stillwell's protected classes to the following adverse actions:

a.   Requirement that lease renewals to be signed in person;

b.   Refusal to provide September 23, 2021 Lease, October 6, 2021, and October 29, 2021 leases within fifteen (15) days as required by Cal. Civ. Code § 1962;

c.   Advertised, quoted and charged Stillwell higher rent for Apartment #2814;

d.   Cancelation or termination of rental agreement without lawful cause;

e.   Refusal to honor lease renewals and lease renewal offers without lawful cause;

f.   Rejecting, refusing, and refunding rental payments without lawful cause;

SECOND AMENDED COMPLAINT
- 21 -

g. Revoking privileges to view ledgers, utility statements, reserve amenities and request maintenance service in Rent Cafe, without lawful cause;

h. Application of different income requirements, rental standards, and qualification criteria for Stillwell to renew the lease Apartment #2814; and

i. Offering Stillwell inferior terms, conditions, privileges, or services in connection with renting Apartment #2814

106.    From September 1, 2021 through December 15, 2022, Onni knowingly and willfully took at least twenty (20) adverse actions against Stillwell because of her color or race, in violation of Civ. Code § 51(b), 42 U.S.C. § 3604, and L.A.M.C. § 45.33(13).

a. Each of the acts constitutes a separate act of discrimination and a separate TAHO violation.

**Overcharged Rent for Apartment #2814 – December 2021 Lease**

107.    From November 1, 1, 2021 until October 27, 2021, Onni knowingly and willfully overcharged Stillwell for rent fourteen (14) times. Onni overcharged Stillwell at least $274.00 per month to rent Apartment #2814, because of Stillwell's race and or color in violation of Cal. Civ. Code § 51(b), Cal. Gov. Code § 12955(a), 42 U.S.C. § 3604(b), 24 C.F.R. § 100.60(a)(3), 24 C.F.R. §100.50(b)(2), and L.A.M.C. § 45.33(13).

a. Each of the fourteen (14) acts constitutes a separate act of discrimination and a separate TAHO violation.

108.    Stillwell was forced to surrender Apartment #2814 on April 30, 2023.

109.    On or about May 12, 2023 Onni advertised Apartment #2814 for $3,935.00 per month and offered free parking. Upon information and belief, the cost of parking for one vehicle at Hope + Flower is at least $150.00 per month.

SECOND AMENDED COMPLAINT

110.     Upon information and belief, Onni leased Apartment #2814 to someone who is not in Stillwell's protected class. Onni charged the tenant at least $784.00 less per month in rent **and** offered the tenant "free" parking, which normally cost at least $150.00 per month.

**Death of Heidi Planck at Hope + Flower**

111.     On or about November 10, 2021, Stillwell complained to Onni about the crime and safety at Hope + Flower, including Onni's lack of cooperation with LAPD with the Heidi Planck investigation.

112.     On or about December 6, 2021, Stillwell wrote a Yelp review about Hope + Flower regarding the retaliation, safety concerns, including the climate of fear caused by Onni's lack of cooperation and dismissive response to resident's concerns about Planck's disappearance.

113.     Onni's dishonesty, lack of care, and overall handling of the investigation of Planck's death caused Stillwell severe emotional distress, and pain and suffering.

114.     Stillwell's complaints to Onni regarding Heidi Planck and other unsafe or illegal living conditions at Hope + Flower were lawful, peaceful, and protected activities under, Cal. Civ. Code § 1942.5(d)

115.     Onni's conduct related to Heidi Planck's death On October 26, 2021, October 27, 2021, October 28, 2021, and October 29, 2021was menacing conduct constituting a course of conduct that interfered with Stillwell's quiet enjoyment of the premises and created an apprehension of harm in Stillwell in violation of Cal. Civ. Code §§ 1927  and 1940.2 (a)(3).

**Retaliation / Inferior Leasing Terms: Rent Cafe Resident Portal**

SECOND AMENDED COMPLAINT

- 23 -

116.     Onni knowingly and willingly took the following adverse actions against Stillwell in retaliation because of Stillwell's complaints in October 2021 about safety and Heidi Planck, in violation of Cal. Civ. Code §§1942.5(d), 52.1 and 42 U.S.C. § 3617:

a.   On or about October 27, 2021, Onni deactivated Stillwell's Rent Café access.

b.   On or about October 27, 2021, Onni returned Stillwell's October 2021 rent.

c.   On or about October 28, 2021, Onni cancelled Stillwell's lease renewal

d.   On October 28, 2021, Onni endeavored to evict Stillwell, in violation of L.A.M.C § 49.99.2(B)

e.   On October 28, 2021, Onni refused to accept October 2021 rent from Stillwell.

f.   On October 29, 2021, Onni offered Stillwell inferior leasing terms compared to similarly situated persons outside of Stillwell's protected classes

g.   On October 29, 2021, Onni refused to provide copy of the October 29, 2021 Lease in violation of Cal. Civ. Code § 1962(a)(4).

117.     After Onni restricted Stillwell's Rent Café access, Stillwell was no longer able to enjoy 24/7 self-service account management, check her balances and make rent payments, schedule recurring auto-payments for rent and other dues, submit maintenance requests, reserve amenities, or check out upcoming community events.

a.   Onni's restriction of Stillwell's Rent Café access constitutes twelve (12) separate offering of inferior terms, conditions, privileges, or services for each month that Stillwell was denied Rent Café access.

b.   Onni's restriction of Stillwell's Rent Café access constitutes twelve (12) separate refusal of rent for each month that Stillwell was denied Rent Café access.

118.     On October 26, 2021, October 27, 2021, October 28, 2021, and October 29, 2021, Onni used threats, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion with Stillwell's exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California, in violation of Ca. Civil Code §52.1.

119.     At the time of filing this Complaint, Onni's restriction of Stillwell's Rent Café access constitutes twenty-four (24) separate violations of Cal. Civ. Code §§1942.5(d), 52.1 and L.A.M.C. § 45.33, for a total of seventy-two (72) violations.

## City of Los Angeles COVID-19 Emergency Renter Protections L.A.M.C. §§ 49.99 *et. seq.*

120.     On May 12, 2020, the Los Angeles City Council adopted the Temporary Protection of Tenants During Covid-19 Pandemic ("LA Eviction Ordinance") which suspends certain evictions of renters for failure to pay rent due to COVID-19 related loss of income.

121.     L.A.M.C § 49.99.1(B) defines "Endeavor to evict" as conduct where the Owner lacks a good faith basis to believe that the tenant does not enjoy the benefits of this article and the Owner serves or provides in any way to the tenant: a notice to pay or quit, a notice to perform covenant or quit, a notice of termination, or any other eviction notice.

122.     L.A.M.C § 49.99.1(C) defines "Local emergency period" as the period of time from March 4, 2020, to the end of the local emergency as declared by the Mayor.

123.     Onni-BC and Onni are each an Owner as defined by L.A.M.C § 49.99.1(E).

SECOND AMENDED COMPLAINT
- 25 -

124.     Hope + Flower Apartments are a "Residential real property" as defined by L.A.M.C § 49.99.1(F).

125.     Upon information and belief, the Local emergency period ends on January 31, 2023.

**Endeavor to Evict – November 2021**

126.     On November 3, 2021, Stillwell informed Onni that she applied for COVID-19 rental assistance through Housing is Key ("HIK"). Stillwell also provided Onni with a notice of her inability to pay rent due to circumstances related to the COVID-19 pandemic (hereafter, "November 2021 COVID-19 Declaration).

127.     On November 9, 2021, Onni served Stillwell a 3-Day Notice to Pay Rent or Quit, in violaton of L.A.M.C § 49.99.1(B) (hereafter, "November 2021 Notice to Quit").

    a.   On November 9, 2021, Onni also served Stillwell with Notice to Cure Covenant or Quit, in violaton of L.A.M.C § 49.99.1(B) ("Notice to Cure Covenant").

128.     Onni served the November 2021 Notice to Quit and Cure in bad faith and endeavored to evict for non-payment of rent during the Local Emergency Period because Stillwell unable to pay rent due to circumstances related to the COVID-19 pandemic.

**Malicious Prosecution – December 2021 Unlawful Detainer Complaint**

129.     On December 7, 2021, Evans and KTS filed an unlawful detainer complaint, *Onni Real Estate IX, LL vs Brittany Stillwell, et al.* Case No. 21STUD03349, in Los Angeles Superior Court, ("December 2021 Unlawful Detainer Complaint").

130.     On or about December 9, 2021, Onni contacted Stillwell and offered to dismiss the December 2021 Unlawful Detainer Complaint against Stillwell and honor her September

SECOND AMENDED COMPLAINT

- 26 -

23, 2021 Lease if Stillwell agreed to remove her Yelp review about Heidi Planck's death and other criminal activity at Hope + Flower. Stillwell deleted the Yelp review on or about December 9, 2021.

131.    On December 15, 2021 at 8:56AM, Stillwell texted Onni Regional manager James O'Neill ("O'Neill") the following:

> Good morning James. This is Brittany Stilwell. We spoke last week about the unlawful eviction suit. You stated someone from H+F would be contacting me - that hasn't happened. I also don't see where the case has been dismissed. My reply is due today in court. Please confirm by 12p that the case has been dismissed. Otherwise I'll proceed with a reply and counter-suit

132.    On or about December 15, 2021, Evans and KTS filed a Request for Dismissal of the December Unlawful Detainer ("December 2021 Request for Dismissal"). The December 2021 Request for Dismissal was granted.

133.    Onni endeavored to evict for non-payment of rent during the Local Emergency Period because Stillwell unable to pay rent due to circumstances related to the COVID-19 pandemic.

134.    Onni also endeavored to evict Stillwell in violation of L.A.M.C § 49.99.2 and to retaliate against Stillwell's against Stillwell's safety complaints and Yelp Review!!! The December 2021 Unlawful Detainer Complaint was filed in bad faith, and in furtherance of schemes to defraud Stillwell and California's COVID-19 rental assistance program.

135.    Onni knowingly and willingly took the following adverse actions against Stillwell in retaliation because of Stillwell's complaints in October 2021 about safety and Heidi Planck, in violation of Cal. Civ. Code §§1942.5(d), 52.1 and 42 U.S.C. § 3617:

    a.  On November 9, 2021, Onni served Stillwell a 3-Day Notice to Pay Rent or Quit

b.   November 9, 2021, Onni also served Stillwell with Notice to Cure Covenant or Quit

c.   On December 7, 2021 filed December 2021 Unlawful Detainer Complaint

136.       On or about November 9, 2021 and December 7, 2021, Onni used threats, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion with Stillwell's exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California, in violation of Ca. Civil Code §52.1

137.       Onni's retaliatory conduct related in November 2021 and December 2021, was menacing conduct constituting a course of conduct that interfered with Stillwell's quiet enjoyment of the premises and created an apprehension of harm in Stillwell in violation of Cal. Civ. Code §§ 1927 and 1940.2 (a)(3).

138.       Onni's endeavors to evict Stillwell in November 2021 and December 2021 constitutes three (3) separate violations of Cal. Civ. Code §§1942.5(d), 52.1, and L.A.M.C. § 45.33.

**Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §§ 1692 et seq.**

139.       Evans and KTS are debt collectors" as defined by the FDCPA, 15 U.S.C. §1692(a)(6).

140.       Stillwell is a "consumer" within the meaning of the FDCPA, 15 U.S.C. §1692(a)(3).

141.       Pursuant to 15 U.S.C. § 1692, Stillwell has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

142.     Alleged debt pursued by Onni, KTS, and or Evans in unlawful detainers is debt primarily for personal, family or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692(a)(5).

143.     Pursuant to L.A.M.C.§ 49.99.2 city of Los Angeles tenants must pay any rent deferred during the Local Emergency Period by February 1, 2024.

    a.   Evans and KTS knowingly and willing filed hundreds of unlawful detainers that had Plaintiff-landlord pending rental assistance applications while payment was deferred pursuant to L.A.M.C.§ 49.99.2 .

144.     Evans and KTS acted unconscionably by filing unlawful detainer suits on behalf of Onni during the Local Emergency Period and by attempting to collect on alleged debts from Stillwell they knew or should have known, were not due.

**RICO Scheme #2– Unlawful Evictions**

145.     Upon information and belief Evans and KTS knowingly and willingly participated and or operated a scheme with Onni Group Enterprise of endeavoring to evict tenants in violation of L.A.M.C. § 49.99.2, which allowed Onni to apply and receive rental assistance after the tenant was evicted and without the tenant's knowledge.

    a.   Once the tenants were evicted, Onni withdrew occupied residential units from the rental market and re-leased the units as short-term rentals, in violation of the Ellis Act, Cal. Gov. Code §§7060, et seq and L.A.M.C. § 49.99.4.

146.     Upon information and belief, from March 4, 2020 through the filing of this Complaint, KTS and Evans knowingly and willingly filed more than five hundred (500)

SECOND AMENDED COMPLAINT
- 29 -

unlawful detainers in Los Angeles Superior Court, on behalf of Onni Group Enterprise, in violation of L.A.M.C. § 49.99.2.

147.     Upon information and belief, Defendants Onni and Onni-BC exercised control over Defendants Evans and KTS' attempts to collect the alleged debt via unlawful detainer lawsuits.

148.     Defendant Onni-BC is vicariously liable for Defendants Evans and KTS' actions as they had agency over determining the amount of the alleged debt that the debt collectors, Defendants Evans and KTS, were allowed to attempt to collect on their behalf.

149.     Defendant Onni is vicariously liable for Defendants Evans and KTS' actions as they had agency over determining the amount of the alleged debt that the debt collectors, Defendants Evans and KTS', were allowed to attempt to collect on their behalf.

150.     Defendants Evans and KTS would not legally be allowed to collect the alleged debt on behalf of Onni-BC and Onni if Defendants Onni-BC and Onni had not in fact given them approval or agency to act on their behalf to collect in a manner Onni-BC and Onni had knowingly approved or permitted.

151.     Upon information and belief, Defendants Onni-BC and Onni gave Defendants Evans and KTS the green light, and thus agency, to attempt to collect the alleged debt in the manner in which Evans and KTS did.

152.     Evans and KTS each were each necessary and integral for the scheme.

**Endeavor to Evict – May 2022**

SECOND AMENDED COMPLAINT

153.    On May 5, 2022, Stillwell provided Onni with a notice of her inability to pay rent due to circumstances related to the COVID-19 pandemic ("May 2022 COVID-19 Declaration").

154.    On or about May 11, 2022, Onni served Stillwell a 3-Day Notice to Pay Rent or Quit, (hereinafter "May 2022 Notice to Quit") in violation of L.A.M.C.§ 49.99.1(B) .

155.    Onni served the May 2022 Notice to Quit in bad faith and endeavored to evict for non-payment of rent during the Local Emergency Period because Stillwell unable to pay rent due to circumstances related to the COVID-19 pandemic.

**June 2, 2022 Maintenance Incident**

156.    On June 2, 2022, around 9:50AM, Onni sent a man pretending to be a maintenance worker to Stillwell's apartment to change her locks, in an unlawful attempt to lock Stillwell out of her apartment.

   a.   According to Onni, the concierge and security "must follow protocol and ensure they are calling every resident every time there is a delivery or guests." Onni's protocol for emergency and non-emergency maintenance also includes notice and consent, especially or maintenance requests outside of normal business hours.

   b.   Stillwell did not receive a call or notification that a maintenance would need to enter her home on June 2, 2022.

157.    Upon information and belief, Onni does not keep records of when its employees, vendors, or contractors enter a resident's home. Onni does not keep a log of its mandatory inspections. Without any oversight, Onni's employees, vendors, or contractors are given free rein to enter Stillwell's home, unlawfully, without notice or consent.

SECOND AMENDED COMPLAINT
- 31 -

158.     Onni has failed to take steps to prevent its employees, contractors, and vendors from trespassing and unlawfully entering Stillwell's residence.

159.     Onni failed to address or investigate the June 2nd incident.  On or about June 4, 2022 Stillwell informed Onni that she filed a complaint against Onni with California Department of Fair Employment and Housing ("DFEH"). Stillwell's complaints to DFEH were lawful, peaceful, and protected activities under, Cal. Civ. Code § 1942.5(d)

**September 13, 2022 Manager Incident**

160.     On September 13, 2022, a man pretending to be an Onni manger attempted to enter Stillwell's home with a master key fob, without notice or consent.

161.     On or about September 14, 2022, Onni locked Stillwell out of her apartment by removing access to Apartment #2814 from both of Stillwell's key fobs.

162.     At the time of filing this Complaint, Onni has not addressed Stillwell's safety and security concerns, despite receiving video and photos of the security and safety incidents discussed herein.

163.     Onni's conduct related to the lockout was menacing conduct constituting a course of conduct that interfered with Stillwell's quiet enjoyment of the premises and created an apprehension of harm in Stillwell in violation of Cal. Civ. Code §§ 1927 and §1940.2 (a)(3).

164.     On or about June 2, 2022, September 13, 2022, and September 14, 2022, Onni used threat, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion with Stillwell's exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California, in violation of Ca. Civil Code §52.1.

**Malicious Prosecution - June 2022 Unlawful Detainer**

165.     On June 22, 2022, Evans and KTS filed an unlawful detainer complaint, *Onni Real Estate IX, LL vs Brittany Stillwell, et al.*  Case No. 22STUD03096, in Los Angeles Superior Court, ("June 2022 Unlawful Detainer Complaint").  Evans and KTS filed the Unlawful Detainer on behalf of Onni, for Stillwell's alleged debt in the amount of $4,619 that was due to Onni on May 1, 2021.

166.     Onni endeavored to evict Stillwell in violation of L.A.M.C § 49.99.2 and to retaliate against Stillwell's complaints to DFEH and on June 4, 2022.

167.     On August 22, 2022 Evans and KTS filed a Request for Dismissal of the July 2022 Unlawful Detainer. The dismissal was granted on or about September 6, 2022.

168.     In June 2022, Onni used threats, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion with Stillwell's exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California, in violation of Ca. Civil Code §52.1

169.     Onni's retaliatory conduct related in June 2022 was menacing conduct constituting a course of conduct that interfered with Stillwell's quiet enjoyment of the premises and created an apprehension of harm in Stillwell in violation of Cal. Civ. Code §§ 1927 and 1940.2 (a)(3).

170.     Onni caused the June 2022 Unlawful Detainer Complaint to be filed in bad faith, and in furtherance of schemes to defraud Stillwell, violations of Cal. Civ. Code §§1942.5(d), 52.1, and L.A.M.C. § 45.33.

171.     Each time Onni, KTS and Evans sent a person to Stillwell's home to collect a debt that was not due, constitutes a separate TAHO violation. Onni, KTS, and Evans

attempted to collect debt knew wasn't due and on the following dates: December 8, 2022, June 28, 2022, June 29, 2022, and three times on June 30, 2022, at approximately 7:49AM, 10:08PM, and 10:15PM.

    a.   Hope + Flower security and concierge deviated from their established procedures and did not call Stillwell beforehand to inform her that anyone was being sent to her residence.

172.    The alleged debt pursed in the June 2022 Unlawful Detainer Complaint was rent deferred during the Local Emergency Period, therefore it was not collectable pursuant to L.A.M.C. § 49.99.2

173.    Evans and KTS used deceptive and misleading tactics when they communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debt was disputed and by reporting a an alleged debt known to be invalid in violation of 15 U.S.C. §§1692e, 1692e(8)

174.    KTS and Evans acted unconscionably and engaged in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, in violation of 15 U.S.C. § 1692f.

175.    Each communication used December 2021 and June 2022 Unlawful Detainer Complaints used interstate wires in furtherance of Onni Group's schemes to defraud Stillwell. The exact, date, time, location, and contents of the communications are in possession of KTS, Evans, Onni, and Stillwell.

176.    In December 2021 and in June 2022 Onni, KTS, and Evans each used threat, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion with Stillwell's exercise or enjoyment of rights secured by the Constitution or laws of the

United States, or of the rights secured by the Constitution or laws of California, in violation of Ca. Civil Code §52.1.

177.     The conduct of Onni, KTS, and Evans, each of them, related to the December 2021 and June 2022 Unlawful Detainer Complaints was threatening, harassing, and menacing conduct constituting a course of conduct that interfered with Stillwell's quiet enjoyment of the premises and created an apprehension of harm in Stillwell in violation of L.A.M.C. §§ 49.99.2, 45.33, Cal. Civ. Code §§ 1927,1940.2, 51.2 and 42 U.S.C. § 3617.

**Unlawful Entry / Trespass**

178.     On the following dates Onni attempted to enter or entered Stillwell's apartment illegally, without giving proper notice as required by Cal. Civ. Code § 1954.

   a.   January 3, 2022, January 29, 2022, March 12, 2022, June 2, 2022, June 3, 2022, June 8, 2022, June 22, 2022, August 12, 2022, September 13, 2022, October 16, 2022, November 9, 2022, December 2, 2022, and on December 13, 2022.

179.     The actions of Onni in attempting to enter and entering Stillwell's apartment illegally constitute Trespass against Stillwell and were undertaken by Onni deliberately and with malice and with the intent to oppress Stillwell, and were intended to, and did cause, Stillwell to suffer damages, including but not limited to, severe emotional distress and mental anguish and humiliation.

180.     Onni did the actions previously alleged with malice in that they intended to cause injury to Stillwell by despicable conduct which was carried on by Onni with a willful and conscious disregard of the rights or safety of Stillwell, and with oppression in that Onni engaged in despicable conduct that subjected Stillwell to cruel and unjust hardship in conscious disregard of the rights of Stillwell, with the intent to oppress Stillwell and

cause her to suffer injury, in that Onni was angry at Stillwell for asserting her legal rights under California law.

**RICO Scheme #3 Overcharged Tenants Utilities and Unnecessary Fees**

181.     Upon information and belief, Onni developed a scheme in which it overcharged its residents on average anywhere between $100 - $300 per month in unnecessary fees and overcharged utilities. Onni also passed off its commercial expenses, such as illegal hotel operations, to residents of Hope + Flower.

182.     According to a ledger provided by Onni to Stillwell in August 2022, (hereinafter, "August 2022 Ledger") Onni overcharged Stillwell a total of $9,371.00 for rent in November 2021, which is $4,752.00 more than Stillwell's rent of $4,916.00. In November 2021 Onni also charged Stillwell twice for storage and twice for Resident Liability Waiver.

183.     Beginning March 4, 2022, Onni began charging Stillwell late fees on unpaid COVID-19 rent. Pursuant to the LA Eviction Ordinances and Cal. Health & Saf. Code § 50897.1, landlords may not charge interest or late fees on unpaid rent due to COVID-19.

   a.   At the time of filing this Complaint, Onni charged Stillwell ten (10) late fees on unpaid rent due to COVID-19 in the amount of $100.00 on the following dates: 03/04/2022, 04/04/2022, 05/04/2022, 06/04/2022, 07/04/2022, 08/04/2022, 09/04/2022, 10/04/2022, 11/04/2022, and 12/04/2022. Onni owes Stillwell a credit of $1,000.00 for unlawfully charging Stillwell late fees on ten (10) months of unpaid rent due to COVID-19.

184.     According to the August 2022 Ledger, and unbeknown to Stillwell, on September 1, 2020, Onni began sporadically charging Stillwell for electricity in the common areas, ("Common Area Electricity Fee").

SECOND AMENDED COMPLAINT

- 36 -

a. Stillwell has never signed a utility service addendum consenting to the common area electricity charge, because Onni passes of its commercial electricity charges to its residential tenants.

b. Onni advertises and offers free electrical car charging for residents in its parking structure located at Hope + Flower. However, non-residents can access the car charging ports and charge their cars for free. Stillwell has never used Onni's electrical car charging ports and has never agreed to cost-sharing an expense that Onni advertises as an included amenity.

c. Each month Onni charged Stillwell for Common Area Electricity Fees, these fees were on average 150% *more* than Stillwell's entire monthly electricity costs for her two-bedroom apartment, which is over 1,000 square feet.

d. Since 2020, Onni has overcharged Stillwell for a Common Area Electricity Fee fourteen (14) times, for a total amount of $1,603.54. Onni owes Stillwell a credit of $1,603.54 for overcharging Stillwell fourteen (14) times for Common Area Electricity Fees.

e. California law prohibits landlords from profiting from providing utility services. Onni is only allowed to charge Stillwell the same amount as the utility company charges Stillwell, plus a small fee for creating Stillwell's invoices and managing Stillwell's utilities.

185.    In November 2021, Onni began charging Stillwell $2.00 per month for 'Pest Charges.' Stillwell does not have any pet or pest and has never had a pest or rodent problem. According to the California Department of Consumer Affairs, pest control is

responsibility of landlord's warranty of habitability. Pursuant to every lease Stillwell has signed with Onni, the cost of Pest control is paid by Onni.

    a.   Onni owes Stillwell a credit of $28.00 for overcharging Stillwell fourteen (14) times for Pest Control Fees.

186.    In March 2021, Onni began charging Stillwell $12.00 per month for Resident Liability Waiver.

    a.   Onni charges tenants a Resident Liability Waiver fee whenever the tenant does not have rental insurance, or whenever a tenant signs a Resident Liability Waiver addendum agreeing to be charged for insurance.

    b.   Stillwell provided Onni with proof of her Rental Insurance multiple times and has made multiple requests for Onni to remove this charge.

    c.   Stilwell has never signed a Resident Liability Waiver addendum agreeing to be charged for insurance and has maintained Renter's Insurance as required by lease

    d.   Onni owes Stillwell a credit of $300 for overcharging Stillwell twenty-five (25) times for Resident Liability Waiver fee.

187.    Since March 2020, Onni has overcharged Stillwell at least $7,795 in unnecessary rents, utilities, and fees.

188.    Upon information and belief, since March 2020, Onni overcharged Hope + Flower residents more than $1,000,000 in duplicate rents, unnecessary fees, overcharge utilities, and other unauthorized expenses.

189.    Each time Onni processed a payment without Stillwell having access to Rent Café to review the fees and charges constitutes an unauthorized bank charge and a separate RICO predicate act of wire fraud.

**RICO Scheme #4– COVID-19 Rental Assistance Scheme**

190.     Upon information and belief, in March 2021 Onni devised a scheme to submit fraudulent rental assistant applications on behalf of unknowing Hope + Flower residents, including Stillwell. Onni began creating falsified documents and ledgers and backdated rent statements with the intentions of collecting rental assistance for rent that had been paid by tenants. The fraudulent applications sought rental payments for rent that had previously been paid by tenants.

191.     Upon information and belief, Onni targeted Stillwell in a scheme to fraudulently collect COVID-19 rental assistance on behalf of Stillwell, and on account of her marital status, race, ethnicity, ancestry and/or source of income.

192.     Upon information and belief, sometime in September 2021 Onni created a HIK Tenant Account and completed a Tenant Application, Tenant/ Client ID 755125, for Stillwell without her knowledge or consent. Onni made itself the Representative, which allowed Onni to request application status and update the fraudulent application on Stillwell's behalf.

193.     Upon information and belief, from March 2021 through November 2021, Onni created at least seven (7) fake rental statements for December 1, 2020, January 2021, February 2021, March 2021, April 2021, October 2021, and November 2021 to submit with rental applications on behalf of Stillwell. Stillwell's rent for these seven months was paid by Stillwell and not in arrears when Onni applied for rental assistance.

194.     Upon information and belief, on or about May 3, 2022, Onni received $23,760.00 in rental assistance, from Housing Is Key to be applied towards Stillwell's "Rental arrears,

prospective rent payments, and utilities, including arrears and prospective payments for utilities, pursuant to Cal. Health & Saf. Code § 50897.1"

195.     Upon information and belief Onni submitted at least two-hundred and seventy (270) rental assistance applications, under penalty of perjury, on behalf of unsuspecting Hope + Flower tenants. The rental relief applications contained fraudulent information about the amount of rent and fees in arrears.

**Fiduciary Duty**

196.     Onni owed Stillwell and Housing is Key fiduciary duties of care and accounting.

197.     Onni and Stillwell were in a fiduciary relationship because the Onni exclusively maintained documentation showing expenses for property maintenance, utilities, and rent compelling Stillwell to rely on the good faith of Onni in assessing the charges and past due rent Stillwell owed. Onni also exclusively maintained control and possession of rental assistance that was awarded to Stillwell to be applied towards Stillwell's rent in arrears

198.     Onni and Housing is Key were in a fiduciary relationship because Onni exclusively maintained documentation showing expenses for property maintenance, utilities, and rent compelling Housing is Key to rely on the good faith of Onni in assessing the charges and past due rent Stillwell owed.

199.     Onni's fiduciary Duty of Care - required Onni to exhibit honesty, act in good faith, and exercise ordinary and reasonable care in the discharge of their duties.

200.     Onni's fiduciary Duty of Accounting - required Onni to adopt and following accounting procedures and controls and ensure Stillwell's HIK rental assistance funds were used for lawful purposes.

201.     Onni breached its fiduciary duty to Housing is Key and breached its fiduciary duties to Stillwell.

202.     As an attorney licensed in California, Evans owed Stillwell a duty of care and was legally obligated to prevent foreseeable harm to Stillwell because it was reasonable for Evans to do so. It was foreseeable that filing frivolous unlawful detainer suits against Stillwell could result in a default judgment against Stillwell and in emotional as well as financial injury to her.

203.     As debt collection agency and law firm operating in California, KTS owed Stillwell a duty of care and was legally obligated to prevent foreseeable harm to Stillwell because it was reasonable for KTS to do so. It was foreseeable that maintaining frivolous unlawful detainer suits against Stillwell could result in a default judgment against Stillwell and in emotional as well as financial injury to her.

204.     Evans and KTS breached each their duties of care to Stillwell.

**Continued Harassment After Filing of Complaint (ECF No. 1)**

205.     On or about January 18, 2023, the City emailed Stillwell a courtesy copy of two (2) letters, "COVID letter" and "TAHO letter" that were sent to Onni Real Estate IX, LLC and Onni Real Estate Holdings LTD  (hereafter "Onni Defendants").

   a.   The COVID letter dated January 18, 2023 is addressed to the Onni Defendants at "1201 S. Hope Street, Los Angeles, CA 90015." The COVID letter states in part:

   The Investigation and Enforcement Section of the Los Angeles Housing Department (LAHD) has reviewed the complaint received regarding:

   **Illegal Eviction**

   In order to comply with the Mayor's *Public Order*, please provide the Tenant a written cancellation of the two Notices to Pay Rent or Quit dated November 9,

2021: one notice charges $4,752.00 for rent due in November, 2021 and the second notice charges $171.82 for utilities due in November, 2021. Please provide a copy of the written cancellation to LAHD.[4]

206.     The TAHO letter dated January 18, 2023 states in relevant part:

Be advised, the Tenant received two Notices to Pay Rent or Quit dated November 9, 2021. The first Notice charges $4,752.00 for rent due in November, 2021, and the second Notice charges $171.82 for utilities due in November, 2021. These Notices do not comply with Ordinance No. 186606 because the Tenant was impacted by COVID-19.

The Tenant also submitted a copy of Superior Court *FIRST AMENDED CROSS-COMPLAINT* (Case No. 22STUD03096), in which the Tenant alleges that drug and gun cartels operate at the property, that Onni Properties did not cooperate with law enforcement when the Tenant became a victim of burglary, that Onni Properties interrupted the Tenant's access to view or receive utility and rent statements, and that Onnie Properties served the Tenant with unsubstantiated lease violations for conduct and incidents that never occurred. This matter also falls within the definition of harassment under Ordinance No. 187109.

207.     On or about January 18, 2023 through January 23, 2023, Stillwell's landlord, the Onni Defendants, continued harassing behavior after Stillwell refused to meet with Onni Regional Manager James O'Neill to discuss an in-person settlement of the claims raised in Stillwell's Verified Complaint (ECF No. 1). The harassing, threatening and intimidating conduct included an attempted break-in, the deactivation of the locking mechanism on Stillwell's apartment door, which made Stillwell's apartment accessible to any person without the use of a key fob, as her door no longer locked, and also included the presence of armed men standing outside Stillwell's apartment to intimidate her.

---

[4] On February 2, 2022 Stillwell informed LAHD and the City that Onni did not provide the written cancellations as required by the COVID letter. At the time of filing this Amended Complaint, the Onni Defendants have not provided Stillwell with the written cancellations.

SECOND AMENDED COMPLAINT

- 42 -

208.     On or about January 23, 2023, Stillwell was forced to flee her home for safety reasons. Due to the imminent nature of harassment, threats, and intimidation against Stillwell, she was forced to flee with just a few suitcases, leaving behind all of belongings in Apartment #2814.

## CIVIL RICO ALLEGATIONS

209.     Onni-BC, Onni, Evans, KTS, and the Doe Defendants are each a person as defined by 18 U.S.C. § 1961(3), that participated in the conduct of Onni Group via a pattern of racketeering activity, as defined by 18 U.S.C. §1961(5).

210.     Onni-BC, Onni, Evans, KTS, and the Doe Defendants each devised, intended to devise, and or participated in a scheme or artifice to defraud Stillwell and other tenants of Hope + Flower Apartments of money and or property by means of false or fraudulent pretenses, representations, or promises in violation of 18 U.S.C. §§ 1343, 1962 as discussed in detail below.

211.     Onni, Evans, KTS, and the Doe Defendants participated in schemes to defraud Stillwell and other tenants at Hope + Flower Apartments of COVID-19 rental assistance payments, in exchange for kickbacks, and in violation of 18 U.S.C. §§ 1346, 1962 as discussed in detail below.

212.     Onni, Evans, KTS, and the Doe Defendants were each necessary and each committed at least two predicate acts in furtherance of Onni Group's schemes, as discussed in detail below.

**Onni Group Racketeering Enterprise**

213.     At all relevant times Defendant Onni, Defendant Onni-BC, Defendant KTS, Defendant Evans, and others known and unknown to Stillwell, were members and associates of the Onni Group Enterprise, a criminal organization whose members and

SECOND AMENDED COMPLAINT
- 43 -

associates engaged in, among other things: bribery; mail and wire fraud, including through the deprivation of the honest services of City officials and employees; extortion; interstate and foreign travel in aid of racketeering; money laundering; structuring; and obstruction of justice.  The Onni Group Enterprise operates within the Central District of California and elsewhere.

214.    The Onni Group Enterprise, including its leaders, members, and associates, constituted an "enterprise," as defined by 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact.  The Onni Group Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The Onni Group Enterprise engaged in, and its activities affected, interstate and foreign commerce.

**Objectives of the Onni Group Enterprise**

215.    The objectives of the Onni Group Enterprise included, but were not limited to, the following:

a.    enriching the members and associates of the Onni Group Enterprise through means that included: bribery; extortion; and mail and wire fraud, including through the deprivation of the honest services of City officials and employees and through defrauding and harassing its residential tenants;

b.    advancing the political goals and maintaining control and authority of the Onni Group Enterprise by elevating members and associates of the Onni Group Enterprise to, and maintaining those individuals' placement in, prominent elected office, through means that included bribery and mail and wire fraud, including through the deprivation of the honest services of City officials and employees;

c. concealing the financial activities of the Onni Group Enterprise, through means that included money laundering and structuring; and

d. protecting the Onni Group Enterprise by concealing the activities of its members and associates and shielding the Onni Group Enterprise from detection by law enforcement, the City, the public, and others, through means that included obstructing justice.

**RICO Conspiracy**

216.      Beginning on a date unknown to Stillwell, but no later than February 2013, and continuing to the present, in Los Angeles County, within the Central District of California and elsewhere, Defendants Onni, Onni-BC, Evans, KTS, and persons employed by and associated with the Onni Group Enterprise, which engaged in and its activities affected interstate and foreign commerce, conspired with each other and others known and unknown to Stillwell, to unlawfully and knowingly violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Onni Group Enterprise through a pattern of racketeering activity, as that term is defined in 18 U.S.C. §§1961(1) and 1961(5), consisting of multiple acts:

a. involving bribery, in violation of California Penal Code Sections 31, 67, 67.5(b), 68 and 182(a)(1);

b. Mail and Wire Fraud, including through the Deprivation of Honest Services, indictable under 18 U.S.C. §§ 1341, 1343, and 1346;

c. Interstate and Foreign Travel in Aid of Racketeering, indictable under 18 U.S.C. § 1952; and

d.  Obstruction of Justice and Witness Tampering, indictable under 18 U.S.C. § 1512

SECOND AMENDED COMPLAINT

- 45 -

217.    It was a further part of the conspiracy that defendants Onni, Onni-BC, Evans, and KTS each agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

**Means By Which the Object of The Conspiracy Was to Be Accomplished**

218.    Defendants Onni, Onni-BC, Evans, and KTS and other members and associates of the Onni Group Enterprise agreed to conduct the affairs of the Onni Group Enterprise through the following means, among others:

a.    In order to enrich its members and associates, the Onni Group Enterprise operated or participated in a pay-to-play scheme, wherein it paid public officials and their proxies in exchange for official acts.

b.    To hide the money, bribes, and other personal benefits that flowed to elected officials and their proxies, the Onni Group Enterprise engaged in money laundering and other concealment activities.

c.    In order to maintain its power and control, members and associates of the Onni Group Enterprise used their positions and relationships to illicitly ensure it maintained a political power base filled with their allies and obtained significant official LA City positions, resources, and financial support.  Specifically, through bribery, members and associates of the Onni Group Enterprise provided funds to elected officials and their proxies with projects in CD14.

d.    In order to protect the Onni Group Enterprise and avoid detection by law enforcement, the City, the public, and others, members and associates of the Onni Group Enterprise engaged in the following conduct: (1) lying to law enforcement in an effort to impede the investigation into criminal conduct of the Onni Group

Enterprise; (2) attempting to corruptly influence the statements of others to law enforcement; and (3) using encrypted messaging applications, including those utilizing a self-destructing message system, to communicate about the affairs of the Onni Group Enterprise.

## CAUSES OF ACTION

### 1st Cause of Action – Negligence
**(Against Defendants Onni Real Estate IX, LLC & Onni Real Estate Holdings LTD)**

219.     Stillwell refers to, and incorporate by reference, the allegations of paragraphs 1 through 27, 64 - 98, 111 - 115, and 178 – 180 of this complaint, as though fully set forth.

220.     As owners, operators and managers of Hope + Flower Apartments ("Property"), Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD ("Count I Defendants") owed Stillwell the duty to exercise reasonable care in the ownership, management and control of the Property.

221.     These duties owed by the Count I Defendants to Stillwell to exercise reasonable care include, but are not limited to: the duty to refrain from interfering with Stillwell's full use of and quiet enjoyment of her rented premises; the duty to comply with all applicable federal, state and local laws governing Stillwell's rights as tenant; the duty to maintain Stillwell's premises in a safe, healthy and habitable condition for the entire term of Stillwell's tenancy and the duty to not obstruct Stillwell's full use and occupancy of her rented residences.

222.     The Count I Defendants, by the conduct alleged above, so negligently and carelessly maintained, operated, and managed the Property as to breach the duties that they owed to Stillwell.

223.     As a proximate result of the Count I Defendants' actions as herein alleged, Stillwell suffered damages in an amount in an amount not yet ascertained, but which exceeds the jurisdictional minimum of this Court and will be proven at time of trial.

### 2nd Cause of Action – Premise Liability
**(Against Defendants Onni Real Estate IX, LLC & Onni Real Estate Holdings LTD)**

224.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 27, 64 - 98, 111 - 115, and 178 – 180 of this complaint, as though fully set forth herein.

225.     In California, the law of premise liability places a duty of care on property owners to maintain their property in a reasonably safe condition, and to warn guests and visitors of lurking dangers that may not already be open and obvious.

226.     Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD ("Count II Defendants") owed Stillwell a duty of reasonable care to maintain and inspect its Property, repair any potentially dangerous conditions, and to give adequate warning of any dangerous conditions.

227.     The Count II Defendants breached their duty of care to Stillwell, and the Count II Defendants' breach of duty is the proximate cause of Stillwell's injuries.

### 3rd Cause– Violation of Unruh Civil Rights Act, Ca. Civ. Code §§ 51, 52 *et seq*
**(Against Defendant Onni Real Estate IX, LLC & Onni Real Estate Holdings LTD)**

228.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 59, 79- 110, and 181- 195.

229.     Stillwell is an aggrieved person as defined by Ca. Civ. Code § 52(f)

230.     Stillwell is informed and believes that Onni and Onni-BC ("Count III Defendants") were aware of the outrageous and discriminatory conduct of their employees, vendors,

guests, tenants and agents. Rather than taking steps to stop such conduct, Onni and Onni-BC ratified, condoned, aided, abetted, and covered for wrongdoers by allowing its employees, vendors, guests, tenants and agent to remain in the same positions, engaging in the same wrongful conduct against Stillwell.

231.    The Count III Defendants' acts and omissions interfered with the Plaintiff's Civil Rights to seek, obtain, and hold housing without discrimination based upon her race, ethnicity, ancestry, marital status, and source of income, as each of these characteristics is a protected class under the Unruh Civil Rights Act and other bases provided by Section 51 of the California Civil Code.

232.    The Count III Defendants' acts and omissions interfered with the Plaintiffs statutory rights to be free from discrimination in pricing, housing, and other aspects of her life and to be free from discrimination based upon her protected class, retaliation, and unfair business practices as guaranteed by the United States Constitution; the California Constitution; the federal Civil Rights Act and Fair Housing Act/Fair Housing Act of 1968/Fair Housing Act Amendments of 1988;42 U.S.C. §§ 1985(3)& 3601 et seq.; the California Unruh Act, Fair Employment & Housing Act, and Civil Rights Amendments of 1999; Business & Professions Code §§ 17000 &17200 et seq.; Civil Code §§ 51(b),51.5(a),51.6,51.9; and other state and federal laws and regulations.

233.    Section 52.1 of the California Civil Code sets forth the Plaintiff's rights, procedures, and remedies for bringing a civil action when the exercise or enjoyment of rights secured by the Constitution or laws of the United States, of rights secured by the Constitution or laws of this state have been interfered with or attempted to be interfered with.

SECOND AMENDED COMPLAINT
- 49 -

234.     The Count III Defendants' violations of the Plaintiff's' civil rights became so severe, persistent, and offensive that Plaintiff and other tenants found it necessary to vacate the premises.

235.     As a direct and proximate result of the Count III Defendants' actions, Plaintiff has suffered nominal and actual damages in an amount exceeding the minimum jurisdiction of this Court.

236.     As a further direct and proximate result of the Count III Defendants' actions, Plaintiff suffered grief, anxiety, worry, mortification, shock, humiliation, and indignity; and had other mental and emotional distress and suffering. The Defendants' despicable conduct was carried on with a wanton, willful, and conscious disregard for the Plaintiff's' rights.

237.     In addition to compensatory and punitive damages, Stillwell is entitled, pursuant to § 52.1(d, f& h) of the California Civil Code, to the issuance of temporary and permanent injunctions and temporary restraining orders appropriate to prevent the Count III Defendants from continuing to engage in their unlawful practices.

238.     Stillwell is entitled, under § 52. 1((i) of the California Civil Code in addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant 6 to subdivision (b), the court may award the petitioner or plaintiff reasonable attorney's fees.

239.     Stillwell's race, ethnicity, ancestry, marital status, and source of income are each a protected class under the Unruh Civil Rights Act, and the basis upon which the Count III Defendants' discriminatory conduct, described herein, was based upon.

240.     The Count III Defendants willfully and knowingly discriminated against Stillwell on account of her marital status, race, ethnicity, ancestry and/or source of income, in

violation of the Unruh Civil Rights Act, Civil Code §§ 51 *et seq*, by taking the following adverse actions described in detail herein.

241.     Pursuant to Ca. Civ. Code § 52(a), the Count III Defendants are liable to Stillwell for each and every act of discrimination alleged herein.

242.     As a result of the Count III Defendants' discrimination described herein, Stillwell's emotional well-being has substantially suffered and will continue to suffer; Stillwell has experienced and continues to experience severe emotional distress, in an amount to be proven at trial. Stillwell alleges that she has and will continue to suffer substantial losses in earnings, other employment opportunities, employment benefits and other damages, the precise amounts to be proven at trial.

243.     The Count III Defendants' conduct as described herein was extreme, malicious, and oppressive and done with a conscious disregard of Stillwell's rights, safety, or well-being. The Count III Defendants' acts were designed to humiliate and oppress Stillwell; and they had that effect. The Count III Defendants condoned, ratified, and encouraged the conduct of its employees, contractors, and agents. Thus, Stillwell is entitled to exemplary and punitive damages against the Count III Defendants' pursuant to Cal. Civil Code. §3294, if applicable.

**4th Cause of Action – Violations of Fair Housing Act (42 U.S.C. §§ 3604 *et seq*)**
**(Against Defendant Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, Chris James Evans, and Kimball, Tirey & St. John LLP)**

244.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 59, 79- 110, and 181- 195.

245.     Stillwell is an aggrieved person as defined by 42 U.S.C. § 3613(a).

246.     Hope + Flower Apartments at 1201 South Hope Street, Los Angeles, California 90015 are dwelling within the meaning of the Fair Housing Act, 42 U.S.C. § 3603(b).

247.     Defendants Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, Chris James Evans, and Kimball, Tirey & St. John LLP ("Count IV Defendants"), through actions including those described above, have engaged in a pattern and practice of housing discrimination on the basis of race or color as described herein.

248.     The Count IV Defendants' conduct described herein was intentional, willful, and taken in disregard for the rights of others, including Stillwell.

249.     Each of the Count IV Defendants have thereby violated 42 U.S.C. §§ 3604 *et seq.*

**5th Cause of Action – Malicious Prosecution (December 2021 Unlawful Detainer)**
**(Against Defendants Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD,**
**Chris James Evans, and Kimball, Tirey & St. John LLP)**

250.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 25, and 126 - 138, inclusive, as though set forth in full.

251.     On or about December 7, 2021, Defendants Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, Chris James Evans, and Kimball, Tirey & St. John LLP ("Count V Defendants") filed an Unlawful Detainer Eviction against Stillwell with malice and without probable cause.  The lawsuit terminated in Stillwell's favor.

252.     The Count V Defendants' conduct caused Stillwell severe emotional distress, expenses, loss of time, and injury to business.

**6th Cause of Action – Malicious Prosecution (June 2022 Unlawful Detainer)**
**(Against Defendants Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD,**
**Chris James Evans, and Kimball, Tirey & St. John LLP)**

253.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 25, and 153 – 155, and 165 – 177 , inclusive, as though set forth in full.

254.     On or about June 22, 2022, Defendants Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, Chris James Evans, and Kimball, Tirey & St. John LLP ("Count VI Defendants") filed an Unlawful Detainer Eviction against Stillwell with malice and without probable cause.  The lawsuit terminated in Stillwell's favor.

255.     The Count VI Defendants' conduct caused Stillwell severe emotional distress, expenses, loss of time, and injury to business.

**7th Cause of Action - Violations of City of Los Angeles Temporary Protection of Tenants During COVID-19 Pandemic (L.A.M.C. §§ 49.99 _et seq._)**
**(Against Defendants Onni Real Estate IX, LLC & Onni Real Estate Holdings LTD)**

256.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 27, 120 - 138, 153 - 155, 165 – 177, and 205- 208 inclusive, as though set forth in full.

257.     Pursuant to L.A.M.C. § 49.99.7, an aggrieved residential tenant may institute a civil proceeding for injunctive relief, direct money damages, and any other relief the Court deems appropriate, including, at the discretion of the Court, an award of a civil penalty up to $10,000 per violation depending on the severity of the violation.

258.     Stillwell is an aggrieved residential tenant as defined by L.A.M.C. § 49.99.7.

259.     Stillwell provided written notice to Onni and Onni-BC of the alleged violations. Onni and Onni-BC were provided more than 15 days from the receipt of Stillwell's notice to cure the alleged violations. Onni and Onni-BC did not cure the alleged violations.

260.     Onni and Onni-BC knowingly and willingly violated L.A.M.C. §§ 49.99 *et seq.* at least fifteen (15) times, as described in detail herein.

261.     Stillwell was injured financially and emotionally as a result of Onni and Onni-BC's conduct.

262.     Due to the severity of Onni and Onni-BC's conduct, a civil penalty of $10,000 per violation is appropriate here.

### 8th Cause of Action - Violations of the of Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 et seq)
### (Against Defendants Chris James Evans and Kimball, Tirey & St. John LLP)

263.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 25, 129 - 144, and 165 – 177 inclusive, as though set forth in full.

264.     Evans and KTS' ("Count VIII Defendants") December 2021 and June 2022 communications to Stillwell did not contain the disclosures required by 15 U.S.C. § 1692g(a)(5), nor did the Count VIII Defendants' provide such disclosure within five days thereafter. Specifically, the Count VIII Defendants failed to inform Plaintiff that unless she, within thirty days after receipt of the December 2021 and June 2022 communications, disputed the validity of the debt, or any portion thereof, the debt would be assumed to be valid.

265.     The harm suffered by Stillwell is particularized in that the violative initial debt collection communications at issue were sent to her personally, regarded her personal alleged debt, and failed to effectively provide her statutorily mandated disclosures to which she was entitled.

SECOND AMENDED COMPLAINT
- 54 -

266.     Section 1692g furthers the purpose of protecting debtors from abusive debt collection activity by requiring a debt collector who solicits payment from a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that she owes the debt sought by the collector before paying it.

267.     The content of the Count VIII Defendants' December 2021 and June 2022 communications to Stillwell created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA. Specifically, when a consumer is not provided with her legal rights as required by law, she is left in the dark about her options in responding to a debt collection letter. That risk manifested itself here, as Plaintiff was unaware of her validation rights. In addition, The Count VIII Defendants' actions invaded a specific private right created by Congress, and the invasion of that right creates the risk of real harm.

268.     The FDCPA at 15 U.S.C. § 1692e provides, in pertinent part, that "[a] debt

269.     collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

270.     The Count VIII Defendants' used a false, deceptive, and misleading representation in connection with the collection of the Debt, in violation of 15 U.S.C. § 1692e.

271.     The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to her personally, regarded her personal alleged debt, and directed to her a false, deceptive, and misleading representation in connection with the collection of the Debt.

272.     The content of the Count VIII Defendants' December 2021 and June 2022 communications to Stillwell created a material risk of harm to the concrete interest

SECOND AMENDED COMPLAINT

- 55 -

Congress was trying to protect in enacting the FDCPA. Specifically,, the December 2021 and June 2022 communications to Stillwell presents a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices because the letter provides misleading information about the manner in which the consumer can exercise her statutory right to pause debt collection activity while she obtains verification of the debt, or the name and address of the original creditor. In addition, Count VIII Defendants' actions invaded a specific private right created by Congress, and the invasion of that right creates the risk of real harm.

### 9th Cause of Action – Violations of Ca. Civ. Code §1942.5 (Retaliation), (Against Defendants Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD)

273.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 27, 64 - 67, 76 - 104,  and 111 -119, inclusive, as though set forth in full.

274.     Pursuant to Ca. Civ. Code § 1942.5(d) "it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because the lessee has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law."

275.     As described herein, Onni and Onni-BC retaliated against Stillwell after she lawfully and peaceably exercised any rights under the law.

### 10th Cause of Action –Violations of the Tom Bane Civil Right Act (Ca. Civ. Code §§ 52.1, 52 et seq.) (Against Defendants Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, Chris James Evans, and Kimball, Tirey & St. John LLP)

SECOND AMENDED COMPLAINT

- 56 -

276.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 27, 64 - 67, 76 - 104,  and 111 -119, 126 – 138, 153 - 180 and 205 -208, inclusive, as though set forth in full.

277.     The Tom Bane Civil Rights Act provides a private right of action for damages against any person who "interferes," or "attempts to interfere by threat, intimidation, or coercion," with the exercise or enjoyment of a constitutional or other right under California or federal law. (Ca. Civ. Code, § 52.1, subd. (b)–(c).) Public entities are vicariously liable for Bane Act violations. (See Ca. Gov. Code, § 815.2.) The California Supreme Court long ago explained that the Bane Act simply requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." (Jones v. Kmart Corp. (1998) 17 Cal.4th 329, 334.) Many if not all violations of fundamental rights could be so framed. (Venegas v. County of Los Angeles (2004) 32 Cal.4th 820, 850 (Baxter, J., concurring).)

278.     Onni, Onni-BC, Evans, and KTS, used threat, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion with Stillwell's exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California, in violation of Ca. Civ. Code § 52.1

**11th Cause of Action –Violations of Tenant Anti-Harassment Ordinance (TAHO) (L.A.M.C §§ 45.30 *et seq.*)**
**(Against Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, Chris James Evans, and Kimball, Tirey & St. John LLP)**

279.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 27, 60 - 67, 76 - 104,  and 111 -119, 126 – 138, 153 - 180 and 205 -208, as though set forth in full.

SECOND AMENDED COMPLAINT
- 57 -

280.     Pursuant to L.A.M.C. § 45.35,

An aggrieved tenant under this article, or any person, organization, or entity who will fairly and adequately represent the interests of an aggrieved tenant(s) under this article, may institute civil proceedings as provided by law, against any landlord violating any of the provisions of this article and any person who aids, facilitates, and/or incites another to violate the provisions of this article, regardless of whether the rental unit remains occupied or has been vacated due to harassment.

A tenant prevailing in court under this article may be awarded compensatory damages, rent refunds for reduction in housing services, reasonable attorney's fees and costs, imposition of civil penalties up to $10,000 per violation depending upon the severity of the violation, tenant relocation, and other appropriate relief, as adjudged by the court.

281.     Stillwell is an aggrieved tenant as defined by L.A.M.C. § 45.35.

282.     KTS and Evans aided, facilitated, and/or incited Onni and Onni-BC to violate TAHO by filing frivolous unlawful detainer suits to evict tenants who had pending rental assistance applications, in violation of L.A.M.C. 49.99 *et seq.*

283.     Onni and Onni-BC knowingly and willingly violated L.A.M.C. §§ 45.35 *et seq.* at least forty (40) times, as described in detail herein.

284.     Stillwell was injured financially and emotionally as a result of Onni and Onni-BC's conduct.

285.     Due to the severity of Onni, Onni-BC, Evans, and KTS' conduct, a civil penalty of $10,000 per violation is appropriate here.

**12ᵗʰ Cause of Action – Civil RICO (18 U.S.C. §§ 1962(c), 1964(c)**
**Predicate Act: Honest Services Fraud, 18 U.S.C. § 1346**
**(Against Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, Chris James**
**Evans, and Kimball, Tirey & St. John LLP)**

286.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 27, 46 - 48,  145 - 152, 181 – 204, 209 - 218 inclusive, as though set forth in full.

287.     At all relevant times, Onni, Onni-BC, Evans, and KTS ("Count XII Defendants") were "person[s]" pursuant to 18 U.S.C. §§ 1961(3) and 1962(d).

288.     At all relevant times, the Onni Group Enterprise ("OGE") constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

289.     At all relevant times, OGE was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

290.     At all times relevant hereto, the Count XII Defendants each held a position in or were otherwise affiliated with OGE as well as participated in the operation, management, and directed the affairs of OGE.

291.     OGE, as alleged herein, was not limited to the Count XII Defendants' predicate acts and has activities extending beyond the Count XII Defendants' racketeering activity. OGE and its members exists separate and apart from the pattern of racketeering activity. The Count XII Defendants have had and do have legitimate business plans outside the pattern of racketeering activity related to OGE.

292.     The Count XII Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1346 as described above, in violation of  18 U.S.C. § 1962(c).

293.     OGE's racketeering activity commenced at least as early as January 2013 and remains ongoing.

294.     The purpose of OGE's schemes against Stillwell was to defraud Stillwell of money, property, and benefits of monetary value by using wire and mail frauds, devising multiple schemes to deceive, trick and defraud Stillwell.

SECOND AMENDED COMPLAINT

- 59 -

295.     Each Count XII Defendants committed at least two predicate acts in furtherance of the conspiracies and schemes against Stillwell.  These predicate acts in furtherance of the conspiracies and schemes against Stillwell are the acts set forth above in the paragraphs containing RICO Schemes # 1, 2, 3, and 4.

296.     The Count XII Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of the Count XII Defendants was necessary to allow the commission of this pattern of racketeering violation of  18 U.S.C. § 1346, in violation of  18 U.S.C. § 1962(c).

297.     Each Count XII Defendant knew about and agreed to facilitate the scheme to defraud Stillwell of her money,  property,  and other  business property and business interests, including state  and  federal  benefits  of  monetary  value by  fraudulently depriving  Stillwell of  honest services of her elected officials.

298.     It was part of the conspiracy that Count XII Defendants would commit a pattern of racketeering activity in the conduct of the affairs of OGE, including the acts of racketeering  set forth herein.

299.     As a direct and proximate result of the Count XII Defendants' conduct, the acts of racketeering activity of OGE, the predicate acts completed in furtherance of the schemes and artifices,  and violations of  18  U.S.C. § 1962(c), Stillwell has been injured in her money and business property, in an amount of $24,068.00

300.     Pursuant to 18 U.S.C. § 1964(c), Stillwell is entitled to recover treble damages plus costs and attorneys' fees from Defendants as well as any other relief authorized by statute.

**13th Cause of Action – Civil RICO (18 U.S.C. §§ 1962(c), 1964(c)**
**Predicate Act: Wire Fraud, 18 U.S.C. § 1343**
**(Against Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, Chris James**
**Evans, and Kimball, Tirey & St. John LLP)**

301.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 27, 46 - 48,  145 - 152, 181 – 204, 209 - 218, inclusive, as though set forth in full.

302.     At all relevant times, Onni, Onni-BC, Evans, and KTS ("Count XIII Defendants") have unlawfully, knowingly and willfully combined, conspired, confederated  and  agreed together  and  with  others  to  violate  18  U.S.C. § 1343 as described above, in violation of  18 U.S.C. § 1962(c).

303.     Each Count XIII Defendants committed at least two  predicate acts  in  furtherance of  the conspiracies and schemes against Stillwell.  These predicate acts in furtherance of the   conspiracies  and  schemes  against  Stillwell are the   acts   set forth above in the paragraphs containing RICO Schemes # 1, 2, 3, and 4.

304.     The Count XIII Defendants knew  that  they  were  engaged  in  a  conspiracy  to commit  the predicate acts,  and  they  knew  that  the  predicate  acts  were  part  of  such racketeering  activity,  and the  participation  and  agreement  of  each  of  the Count XIII Defendants  was  necessary  to  allow  the commission  of  this  pattern  of  racketeering violation of   18 U.S.C. § 1343, in violation of  18 U.S.C. § 1962(c).

305.     Each Count XIII Defendant  knew  about  and  agreed  to  facilitate  the  scheme  to defraud Stillwell of  her money,  property,  and  other  business property and business interests, including state  and  federal  benefits  of  monetary value.

306.     It was part of the conspiracy that Count XIII Defendants would commit a pattern of racketeering activity in the conduct of the affairs of OGE, including the acts of racketeering set forth herein.

307.     As a direct and proximate result of the Count XIII Defendants' conduct, the acts of racketeering activity of OGE, the predicate acts completed in furtherance of the schemes and artifices, and violations of 18 U.S.C. § 1962(c), Stillwell has been injured in her money and business property, in an amount of $1,885,000.00

308.     Pursuant to 18 U.S.C. § 1964(c), Stillwell is entitled to recover treble damages plus costs and attorneys' fees from Defendants as well as any other relief authorized by statute.

### 14th Cause of Action - Violations of Bus. & Prof. Code §§ 17200 et seq.
### (Against Defendants Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD Chris James Evans, Kimball, Tirey & St. John LLP)

309.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 67, 76 - 95, 99 -195, 205 -208, and 216 - 217, inclusive, as though set forth in full.

310.     Onni, Onni-BC, Evans, and KTS' ("Count XIV Defendants") conduct constituted unlawful, unfair, and fraudulent business acts or practices under Business and Professions Code §§ 17200 et seq.

311.     The Count XIV Defendants practices were unlawful in that they violated:

a.     City of Los Angeles Temporary Protection of Tenants During COVID-19 Pandemic, L.A.M.C. §§ 49.99 et seq.

b.     Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq.

c.     Unruh Civil Rights Act, Ca. Civ. Code §§ 51 -52 et seq.

d.  Fair Housing Act, 42 U.S.C. §§ 3604 *et seq.*

e.  City of Los Angeles Tenant Anti- Harassment Ordinance ("TAHO"), L.A.M.C §§ 45.30 *et se.q*

f.  Ca. Civ. Code § 1942.5

g.  Civil RICO (18 U.S.C. §§ 1962(c), 1964(c))

312.    The Count XIV Defendants' practices were unfair because any utility for their conduct is outweighed by the gravity of the consequences to Stillwell and/or the Count XIV Defendants' conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Stillwell.

313.    The Count XIV Defendant' practices were fraudulent because they were likely to and did deceive Stillwell, and the Count XIV Defendants engaged in such practices knowingly.

314.    As a result of the Count XIV Defendants acts Stillwell lost money and suffered injury in fact, and thus is entitled to restitution, injunctive relief and such other relief authorized under Ca. Civ. Code § 17203, and under all applicable law.

### 15th Cause of Action – Breach of Contract
**(Against Defendants Onni Real Estate IX, LLC & Onni Real Estate Holdings LTD)**

315.    Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 59, 76 - 110, 116 - 119, 126 - 138, 153 - 189, 205 - 208, inclusive, as though set forth in full.

316.    California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California.

317.     Every leasing agreement executed between Stillwell and her landlord Onni was a legally valid and enforceable contract.

318.     The actions of Onni and Onni-BC previously in failing to provide habitable premises and refusing to investigate Stillwell's safety concerns or rectify any of the other problems with the Property constituted a violation of the covenant of good faith and fair dealing.

319.     California law provides that all lease agreements constitute a warranty by the landlord that the premises are habitable.

320.     The actions of Onni and Onni-BC previously in failing to provide habitable premises and refusing to investigate Stillwell's safety concerns or rectify any of the other problems with the Property constituted a breach of his contract with Plaintiffs as the Property became inhabitable.

321.     As a proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount in an amount not yet ascertained but which exceeds the jurisdictional minimum of this Court and will be proven at time of trial.

322.     As a proximate result of Defendant's breach of the contract Plaintiffs have been damaged in an amount not yet ascertained but which exceeds the jurisdictional minimum of this Court and will be proven at time of trial.

**16th Cause of Action – Intentional Infliction of Emotional Distress**
**(Against Defendants Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD Chris James Evans, Kimball, Tirey & St. John LLP)**

323.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 59, 64 - 119, 126 - 138, and 153 - 208, inclusive, as though set forth in full.

324.     The unlawful conduct of Onni, Onni-BC, Evans, and KTS' ("Count XVI Defendants") described herein was undertaken by the Count XVI Defendants deliberately and with malice and with the intent to oppress Plaintiff, and were intended to, and did cause, Stillwell to suffer damages, including but not limited to, humiliation, severe emotional distress and mental anguish.

325.     The Count XVI Defendants did the actions previously alleged with malice in that they intended to cause injury to Stillwell by despicable conduct which was carried on by the Count XVI Defendants with a willful and conscious disregard of the rights or safety of Stillwell. The oppression in that the Count XVI Defendants engaged was despicable conduct that subjected Stillwell to cruel and unjust hardship in conscious disregard of her rights, with the intent to oppress Plaintiff and cause here to suffer injury. Thus, Stillwell is entitled to exemplary and punitive damages in an amount according to proof at time of trial.

### 17th Cause of Action – Negligent Infliction of Emotional Distress
**(Against Defendants Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD Chris James Evans, Kimball, Tirey & St. John LLP)**

326.     Stillwell realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 59, 64 - 119, 126 - 138, and 153 - 208, inclusive, as though set forth in full.

327.     Onni, Onni-BC, Evans, and KTS' ("Count XVII Defendants") conduct owed Stillwell a duty of care and each of the Count XVII Defendants breached that duty of care.

SECOND AMENDED COMPLAINT

- 65 -

328.     Stillwell suffered and continues to suffer damages as a proximate result of each of the Count XVII Defendants' breach of care, as described herein.

329.     But for, and as a direct and proximate result of each of the Count XVII Defendants' conduct as alleged herein, Stillwell's emotional well-being has substantially suffered and will continue to suffer; Stillwell has experienced and continues to experience severe emotional distress, in an amount to be proven at trial. Stillwell alleges that she has and will continue to suffer substantial losses in earnings, other employment opportunities, employment benefits and other damages, the precise amounts to be proven at trial.

330.     The Count XVII Defendants actions were fraudulent, malicious, and oppressive. Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from the Count XVII Defendants, in an amount according to proof at trial, to punish Defendants and deter Defendants and others from engaging in similar future conduct.

### **REQUEST FOR JURY TRIAL**

Stillwell requests a trial on all causes of action for which she has the right to jury.

### **PRAYER FOR RELIEF**

WHEREFORE, Stillwell's pray for judgment as follows:

1.   As to the First Cause of Action - Negligence, Stillwell prays for judgment against Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, and an amount to be proven at trial for economic, noneconomic, monetary, or compensatory damages;

2.   As to the Second Cause of Action - Premise Liability, Stillwell prays for judgment against Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, and an amount to be proven at trial for economic, noneconomic, monetary, or compensatory damages

3. As to the Third Cause of Action - Violation of Unruh Civil Rights Act Civil Code §§ 51 *et seq.*, Stillwell prays for judgment against Onni Real Estate IX, LLC, Onni Real Estate Holdings LTD, and compensatory and emotional damages according to proof, and all monetary damages awarded be trebled pursuant to Civil Code § 52;

4. As to the Fourth Cause of Action – Violations of Fair Housing Act (42 U.S.C. §§ 3604 *et seq.*), Stillwell prays for judgment against Onni, Onni-BC, Evans, and KTS, an amount to be proven at trial for monetary, or compensatory damages, and for punitive damages under 42 U.S.C. § 3613(c)(1), and as otherwise allowed by law.

5. As to the Fifth and Sixth Causes of Action – Malicious Prosecution, Stillwell prays for judgment against Onni, Onni-BC, Evans, and KTS, and an amount to be proven at trial for economic, noneconomic, monetary, or compensatory damages;

6. As to the Seventh Cause of Action – Violations of City of Los Angeles Temporary Protection of Tenants During COVID-19 Pandemic (L.A.M.C. §§ 49.99 *et seq.*), Stillwell prays for judgment against Onni and Onni-BC,  a civil penalty up to $10,000 per each of Onni and Onni-BC's violations, an amount to be proven at trial for monetary, damages, and injunctive relief to stop Onni and Onni-BC from violating local, state, and federal housing laws;

7. As to the Eighth Cause of Action – Violations of the of Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 et seq), Stillwell prays for judgment against Evans, and KTS, and actual and statutory damages pursuant to 15 U.S.C. § 1692k, an order enjoining Evans and KTS from future violations of 15 U.S.C. §§ 1692g(a)(3)-(5) and 15 U.S.C. § 1692e, and reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k;

8.  As to the Ninth Cause of Action – Violations of Ca. Civ. Code § 1942.5 (Retaliation), Stillwell prays for judgment against Onni and Onni-BC, and an amount to be proven at trial for punitive, exemplary, economic, noneconomic, monetary, or compensatory damages;

9.  As to the Tenth Cause of Action – Violations of the Tom Bane Civil Right Act (Ca. Civ. Code §§ 52.1, 52 et seq.), Stillwell prays for judgment against Onni, Onni-BC, Evans, and KTS, and compensatory and emotional damages according to proof, and all monetary damages awarded be trebled pursuant to Civil Code § 52;

10.  As to the Eleventh Cause of Action – Violations of Tenant Anti-Harassment Ordinance (TAHO) (L.A.M.C §§ 45.30 et seq.), Stillwell prays for judgment against Onni, Onni-BC, Evans, and KTS,  a civil penalty up to $10,000 per each of Onni Onni-BC, Evans and KTS' violations, an amount to be proven at trial for monetary, damages, and injunctive relief to stop Onni and Onni-BC from violating local, state, and federal housing laws;

11.  As to the Twelfth Cause of Action – Civil RICO (18 U.S.C. §§ 1962(c), 1964(c)), Predicate Act: Honest Services Fraud (18 U.S.C. § 1346) Stillwell prays for judgment against Onni, Onni-BC, Evans, and KTS,  and monetary damages in the amount of $5,655,000.00;

12.  As to the Thirteenth Cause of Action – Civil RICO (18 U.S.C. §§ 1962(c), 1964(c)), Predicate Act: Wire Fraud (18 U.S.C. § 1343), Stillwell prays for judgment against Onni, Onni-BC, Evans, and KTS, and monetary damages in the amount of $72,204.00;

13.  As to the Fourteenth Cause of Action - Violations of Bus. & Prof. Code §§ 17200 et seq. Stillwell prays for judgment against Onni, Onni-BC, Evans, and KTS, and for restitution, injunctive relief and such other relief authorized under Bus. & Prof. Code § 17203;

14.  As to the Fifteenth Cause of Action- Breach of Contract, Stillwell prays for judgment against Onni, Onni-BC and and monetary damages in the amount to be determined at trial, which

SECOND AMENDED COMPLAINT

- 68 -

will compensate Stillwell for all the detriment proximately caused by Onni and Onni-BC's breach, or the amount that, in the ordinary course of things, would be likely to result therefrom;

15. <u>As to the Sixteenth Cause of Action- Intentional Infliction of Emotional Distress</u>, Stillwell prays for judgment against Onni, Onni-BC, Evans, and KTS, and an amount to be proven at trial for punitive, exemplary, economic, noneconomic, monetary, or compensatory damages;

16. <u>As to the Seventeenth Cause of Action- Negligent Infliction of Emotional Distress</u>, Stillwell prays for judgment against Onni, Onni-BC, Evans, and KTS, and an amount to be proven at trial for economic, noneconomic, monetary, or compensatory damages;

17. For general damages according to proof;

18. For damages for mental and emotional distress according to proof;

19. For an award of attorneys' fees;

20. For prejudgment interest;

21. For an award of exemplary and punitive damages in an amount to be proven at trial;

22. For costs of suit; and

23. For such other relief as the Court may deem proper and just.

Dated: March 1, 2024

    /s/ Brittany A. Stillwell    ,

Brittany A. Stillwell
PLAINTIFF APPEARING IN PRO PER

**VERIFICATIONOF SECOND AMENDED COMPLAINT**

**Subscription and verification of pleadings**
**(Pursuant to Code Civ. Proc., § 446)**

I, Brittany A. Stillwell, declare:

I am the Plaintiff in the above-entitled matter. I have read the foregoing Second Amended Complaint and know of the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 1, 2024

_____/s/ Brittany A. Stillwell_____,

Brittany A. Stillwell
PLAINTIFF APPEARING IN PRO PER

I, Brittany A. Stillwell, declare:

I am the Plaintiff in the above-entitled matter. I have read the foregoing Second Amended Complaint and know of the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 1, 2024

____/s/ Brittany A. Stillwell_____,

Brittany A. Stillwell
PLAINTIFF APPEARING IN PRO PER

VERIFICATIONS FOR SECOND AMENDED COMPLAINT

- 1 -